FILED
COURT OF APPEALS
DIVISION II

2013 JUN 27 AM 9: 32

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| THE BERT KUTY REVOCABLE LIVING TRUST, by its TRUSTEE, DAVID NAKANO, Appellant, | No. 42811-3-II |
| v. | |
| GERRY and JOHN DOE MULLEN, husband and wife; MICHAEL and JANE DOE MULLEN, husband and wife; D.C. INC., d/b/a/ NORTHWEST PROPERTIES OF S.W. WASHINGTON, a Washington corporation; Columbia River Properties, Inc., a Washington corporation; FREDERICK and JANE DOE LEMP, husband and wife; NEW ENTERPRISE, LLC, a Washington LLC; ROBERT and DANIELE HAYES, husband and wife; RUSTY and JANE DOE FIELDS, husband and wife; ENDEAVOR, INC. d/b/a ENDEAVOR CONSULTANTS INC.; JOHN and JANE DOES 1 – 10. Respondents. | ORDER WITHDRAWING OPINION IN RESPONSE TO MOTION TO ENLARGE TIME AND TO PUBLISH OPINION AND FILING AMENDED PART PUBLISHED OPINION |

**THIS MATTER** came before the court on the motion of a third party requesting an extension of time to file a motion to publish and requesting publication of the opinion filed in this court on April 30, 2013. Respondents filed no response objecting to publication of the opinion and appellant filed a response citing no objection to a part published opinion.

Upon consideration of the motion and responses thereto, it is hereby

**ORDERED,** that the unpublished opinion filed on April 30, 2013, is withdrawn and the

No. 42811-3-II

amended part published opinion is filed simultaneously with this order.

DATED this 27TH day of JUNE , 2013.

_____
VAN DEREN, J.P.T.

We concur:

_____
PENOYAR, J.

_____
WORSWICK, C.J.

2

No. 42811-3-II

FILED
COURT OF APPEALS
DIVISION II

2013 JUN 27 AM 9: 32

STATE OF WASHINGTON

BY_____ DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| THE BERT KUTY REVOCABLE LIVING TRUST, by its TRUSTEE, DAVID NAKANO, <br> Appellant, <br><br> v. <br><br> GERRY and JOHN DOE MULLEN, husband and wife; MICHAEL and JANE DOE MULLEN, husband and wife; D.C. INC., d/b/a/ NORTHWEST PROPERTIES OF S.W. WASHINGTON, a Washington corporation; Columbia River Properties, Inc., a Washington corporation; FREDERICK and JANE DOE LEMP, husband and wife; NEW ENTERPRISE, LLC, a Washington LLC; ROBERT and DANIELE HAYES, husband and wife; RUSTY and JANE DOE FIELDS, husband and wife; ENDEAVOR, INC. d/b/a ENDEAVOR CONSULTANTS INC.; JOHN and JANE DOES 1 – 10. <br> Respondents. | No. 42811-3-II <br><br> PART PUBLISHED OPINION |

VAN DEREN, J.P.T. — The Bert Kuty Revocable Living Trust (Kuty Trust) appeals the trial court's summary judgment dismissal of its claim for an accounting of proceeds from a trustee's sale against Robert and Daniele Hayes and summary judgment dismissal of its

3

successor liability claim against Columbia River Properties, Inc.[1] We affirm the trial court and award attorney fees to the Hayeses on appeal.

FACTS

This dispute stems from a failed real estate transaction and subsequent nonjudicial foreclosure, which the Kuty Trust alleged was an equity stripping scheme. The Kuty Trust owned various parcels of real property that it listed for sale through its real estate agent, Jerry Mullen of D.C. Inc. d/b/a Northwest Properties of S.W. Washington. Mullen introduced the Kuty Trust trustee, David Nakano, to Rusty Fields of Endeavor, Inc. Nakano understood that Endeavor assisted purchasers of real property.

In 2006, Mullen and Fields presented the Kuty Trust with a prospective buyer, New Enterprises, LLC,[2] for the undeveloped lot involved in the instant lawsuit. New Enterprises offered to purchase the lot for $80,000 with a combination of financing sources. The Kuty Trust accepted a small down payment and a promissory note secured by a deed of trust for the remainder of the purchase price. New Enterprises executed a promissory note for $56,000 and a deed of trust securing the note in favor of the Kuty Trust.

New Enterprises then entered into a speculative construction loan agreement with LeGrand Investments, LLC,[3] in which LeGrand Investments agreed to loan up to $238,000 to New Enterprises for the lot and for funds to construct a single family residence. New Enterprises

---

[1] In the unpublished portion of the opinion, we discuss the Kuty Trust's contention that the trial court erred in granting summary judgment dismissal of the Kuty Trust's other claims against the Hayeses and in awarding attorney fees and costs against the Kuty Trust. We also discuss the Hayeses' request for attorney fees on appeal.

[2] New Enterprises, LLC was owned by Frederick Lemp.

[3] LeGrand Investments, LLC was owned by Darren Williams.

executed a promissory note for $238,000 to LeGrand Investments and secured the note through a deed of trust on the lot. This transaction required the Kuty Trust to subordinate its deed of trust to LeGrand Investments' deed of trust. Fields and Endeavor structured the deal and prepared the documents.

New Enterprises' promissory note to LeGrand Investments was for a face amount of $238,000, but it was labeled a "Building/Construction Line of Credit." Clerk's Papers (CP) at 146. The note provided, "This promissory note is a line of credit and shall be disbursed to the borrower in draws that are acceptable to the lender." CP at 146. By its provisions, the note matured on November 16, 2007, a year from its execution, and a balloon payment for the principal advanced and compound interest was due at that time. LeGrand Investments recorded its deed of trust on November 17, 2006. Also on November 17, 2006, LeGrand Investments, through its managing member, Darren Williams, wired New Enterprises an initial loan disbursement of $31,000 to purchase the property. On November 30, 2006, LeGrand Investments, through Williams, issued a $9,000 certified check to New Enterprises as an initial construction draw. This $40,000 was the total disbursed under the promissory note/line of credit to New Enterprises from LeGrand Investments.

Robert and Daniele Hayes were looking for an investment opportunity with an attractive rate of return. The Hayeses had no involvement in the initial loan transaction or any ownership interest or other involvement with LeGrand Investments. The Hayeses purchased LeGrand Investments' interest in the promissory note/line of credit and deed of trust on the Kuty Trust lot for $40,000—which was the amount LeGrand Investments had disbursed to New Enterprises. LeGrand Investments assigned all rights and interest in its deed of trust to the Hayeses on

November 29, 2006, and the assignment was recorded that same day. LeGrand Investments assigned all its rights and interest in the promissory note to the Hayeses on December 1, 2006.

New Enterprises defaulted on the LeGrand Investments/Hayes promissory note by failing to pay the loan balance when it matured and became due on November 16, 2007. The Hayeses commenced foreclosure proceedings. The Hayeses hired an attorney to serve as trustee for the foreclosure proceedings. New Enterprises did not respond to the Hayeses' notice of default. The trustee scheduled a trustee's sale for July 25, 2008, and sent notice of the sale by first class mail and certified mail to New Enterprises and to the Kuty Trust because it held a junior security interest in the property. The notice of trustee's sale provided that the principal owing was $40,000, plus interest, late charges, and default interest for a total of $63,724.62.

On April 30, 2008, the Kuty Trust's attorney requested evidence of the loan claimed in the notice of foreclosure. On May 9, the trustee sent the Kuty Trust's attorney documentation showing the $40,000 in loan disbursements to New Enterprises. On June 11, and on June 12, the Kuty Trust's new attorney requested proof of the funds advanced on the loan and a copy of the promissory note and deed of trust being foreclosed. The trustee provided the requested documentation to the new attorney.

On July 2, 2008, the Kuty Trust sued, alleging various claims related to an equity stripping scheme including: (1) breach of contract, negligence, negligent misrepresentation, malpractice and violation of the consumer protection act against the Mullens, D.C. Inc., and

Columbia River Properties;[4] (2) breach of contract against New Enterprises and the Lemps; (3) fraud, violation of consumer protection act, negligent misrepresentation and/or negligence against the Fieldses, Endeavor, New Enterprises, the Lemps, LeGrand Investments, and the Hayeses; and (4) conversion of funds against the Hayeses.

The trustee's sale was held on July 25. The Hayeses directed the trustee to credit the entire outstanding obligation secured by the deed of trust as their opening bid at the sale. Robert Hayes testified in his declaration that he did not tender any funds or documentation as part of the bid at the trustee's sale. There were no other bidders at the sale, so the Hayeses' credit bid was successful. The trustee provided the Hayeses with a trustee's deed for the property but did not prepare or file a written notice of surplus because there were no monies paid to him at the sale.[5]

The Hayeses' attorney, who was also the trustee, wrote a letter to counsel for the Kuty Trust noting that the Kuty Trust had waived its right to contest the sale or the underlying obligations on the property because it had not used the statutory presale remedies.[6] Accordingly, he requested that the Kuty Trust dismiss its lawsuit against the Hayeses.

The Hayeses moved for summary judgment dismissal of the claims against them. The Kuty Trust opposed the motion, moved for a continuance of the motion under CR 56(f) to allow further discovery, and filed an amended complaint adding a claim for an accounting of foreclosure proceeds. On November 14, 2008, the trial court granted partial summary judgment

---

[4] The original complaint named NWREP, Inc. d/b/a Northwest Properties of S.W. Washington as a defendant, but the complaint was later amended to substitute D.C. Inc. d/b/a Northwest Properties of S.W. Washington for NWREP, Inc. The second amended complaint also added Columbia River Properties as a defendant alleging that Columbia River Properties was a successor company to D.C. Inc.

[5] See RCW 61.24.080.

[6] See RCW 61.24.130.

in favor of the Hayeses. It granted summary judgment dismissal with prejudice of the Kuty Trust's claims "challenging either the validity or the finality of the trustee's sale of the subject real property" and claims "challenging the validity of the debt as described in the Notice of Trustee's Sale and foreclosed upon by the trustee's sale." CP at 257. But the trial court did not dismiss the Kuty Trust's claims against the Hayeses for fraudulent misrepresentation.

After responding to interrogatories, the Hayeses renewed their motion for summary judgment, requesting that the trial court dismiss the remainder of the Kuty Trust's claims against them. Both Robert Hayes and the trustee provided declarations in support of the renewed motion for summary judgment. The Kuty Trust conceded that the Hayeses should be dismissed from the civil conspiracy and fraud claims, but the Kuty Trust requested that the Hayeses be dismissed without prejudice in case further discovery revealed the Hayeses were involved in the alleged equity stripping scheme. The Kuty Trust opposed summary judgment on the accounting claim and argued that it should proceed to trial. On January 30, 2009, the trial court granted the Hayeses' motion for summary judgment dismissal with prejudice of all remaining claims against them.

The Kuty Trust filed a second amended complaint substituting D.C. Inc. for NWREP, Inc. because the Kuty Trust learned that Mullen worked for D.C. Inc. rather than NWREP, Inc. The Kuty Trust also added Columbia River Properties as a defendant and alleged that if the Kuty Trust obtained a judgment against D.C. Inc., but was unable to recover it, Columbia River Properties should be liable as D.C. Inc.'s successor company.

Columbia River Properties moved for summary judgment, arguing that it was not liable as a successor company to D.C. Inc. It filed a declaration from Chris Fry, the sole shareholder of Columbia River Properties, in support of its motion. Fry incorporated and was the prior owner

8

of D.C. Inc., but he sold his entire interest in 2004 and moved to California. In 2009, he returned to southwest Washington and was employed by D.C. Inc. He was appointed corporate secretary, but he held no ownership interest. D.C. Inc.'s business was struggling, so a few months later, Fry incorporated Columbia River Properties and quit working for D.C. Inc. When D.C. Inc. dissolved, most of its employees and real estate agents were hired by Columbia River Properties. Through Fry's efforts, Columbia River Properties acquired a portion of D.C. Inc.'s former business.

The Kuty Trust filed a cross motion for summary judgment, arguing that the material facts were not in dispute and that the trial court should hold as a matter of law that Columbia River Properties was liable as a successor company of D.C. Inc. In the alternative, the Kuty Trust requested that the trial court deny Columbia River Properties' motion and proceed to trial.

In support of its summary judgment motion, the Kuty Trust submitted a declaration with a document from the Mullens' bankruptcy proceeding.[7] On Columbia River Properties' motion, the bankruptcy document was stricken as hearsay. Thus, the trial court did not consider the Mullens' bankruptcy document in deciding the summary judgment motion.

On April 1, 2011, the trial court granted Columbia River Properties' motion for summary judgment. The trial court denied both parties' requests for attorney fees. The Kuty Trust unsuccessfully sought reconsideration of the evidentiary ruling and the grant of summary judgment to Columbia River Properties.

---

[7] In one section of its bankruptcy filings, the Mullens were directed to "[l]ist all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within one year immediately preceding the commencement of this case." CP at 538 (emphasis omitted). The Mullens listed Fry as the "creditor or seller" and Northwest Properties as the "description and value of property," and January 15, 2009, as the "date of repossession, foreclosure sale, transfer or return." CP at 538 (capitalization omitted).

No. 42811-3-II

The Kuty Trust's case continued to trial against defendants not parties to this appeal. Based on the evidence presented at trial and the orders of default against the defendants, the trial court entered findings of fact and conclusions of law. The trial court entered judgment against D.C. Inc., New Enterprises, and the Lemps on multiple theories.[8] The Kuty Trust was awarded $127,489.77 in damages and $70,135.44 in attorney fees and costs. The record provided on appeal does not reveal the outcome of litigation against the Mullens, the Fields, LeGrand Investments, or Endeavor.[9]

The Kuty Trust timely appeals the three interlocutory orders granting summary judgment dismissal of all claims against the Hayeses and Columbia River Properties.

ANALYSIS

The Kuty Trust argues that (1) summary judgment dismissal of its claims for an accounting of the proceeds of the trustee's sale against the Hayeses was improper because several genuine issues of material fact regarding the value of the note, the price at the foreclosure sale, and the postsale apportionment of the sale proceeds remain; and (2) the trial court erred in granting Columbia River Properties' summary judgment motion and denying the Kuty Trust's summary judgment motion on the claim that Columbia River Properties was a successor to D.C. Inc.[10] We disagree and affirm the trial court's rulings.

---

[8] The Lemps filed a pro se answer denying all allegations, but it appears from the record that they did not further defend the lawsuit.

[9] Endeavor and Rusty Fields answered the complaint and filed a motion to dismiss. LeGrand Investments also filed an answer and denied the allegations. No other information is available to this court.

[10] The trial court's summary judgment dismissal of the Kuty Trust's unjust enrichment, fraud, and civil conspiracy claims against the Hayeses is discussed in the unpublished portion of this opinion.

I.  STANDARD OF REVIEW

We review a trial court's order for summary judgment de novo, performing the same inquiry as the trial court. *Ruvalcaba v. Kwang Ho Baek*, 175 Wn.2d 1, 6, 282 P.3d 1083 (2012).

> Summary judgment should only be granted if after considering all the pleadings, affidavits, depositions or admissions and all reasonable inferences drawn therefrom in favor of the nonmoving party, it can be said (1) that there is no genuine issue as to any material fact, (2) that all reasonable persons could reach only one conclusion, and (3) that the moving party is entitled to judgment as a matter of law.

*Baker v. Schatz*, 80 Wn. App. 775, 782, 912 P.2d 501 (1996). "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

The moving party bears the burden of demonstrating that there is no genuine issue of material fact. *Atherton Condo. Apartment-Owners Ass'n Bd. Of Dirs. V. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). "'After the moving party submits adequate affidavits, the nonmoving party must set forth specific facts which sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue as to a material fact.'" *Visser v. Craig*, 139 Wn. App. 152, 158, 159 P.3d 453 (2007) (quoting *Meyer v. Univ. of Wash.*, 105 Wn.2d 847, 852, 719 P.2d 98 (1986)). "If the nonmoving party fails to do so, then the summary judgment is proper." *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

II.  SUMMARY JUDGMENT ORDERS WERE APPROPRIATE

A.  Accounting Claim

The Kuty Trust argues that the trial court erred by granting summary judgment dismissal of its claim for an accounting of trustee's sale proceeds against the Hayeses because several

genuine issues of material fact remain regarding the value of the promissory note, the price at the trustee's sale, and the postsale apportionment of the proceeds. We disagree.

The statutory deed of trust is a "'three-party transaction in which land is conveyed by a borrower, the grantor, to a trustee, who holds title in trust for a lender, the beneficiary, as security for credit or a loan the lender has given the borrower.'" *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 92-93, 285 P.3d 34 (2012) (internal quotation marks omitted) (quoting 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 17. 3, at 260 (2d ed. 2004)). Chapter 61.24 RCW governs deeds of trust in Washington. *In re Tr.'s Sale of Real Prop. of Giannusa*, 169 Wn. App. 904, 907, 282 P.3d 122 (2012). Under this act, if the borrower defaults under the terms of the obligation secured by a deed of trust that grants the trustee the power of sale, the trustee may usually foreclose the deed of trust and sell the property without judicial supervision at a trustee's sale. Former RCW 61.24.005(8) (1998); RCW 61.24.030; *Bain*, 175 Wn.2d at 93; *Giannusa*, 169 Wn. App. at 907. Any person other than the trustee, including the beneficiary, may bid at the trustee's sale. RCW 61.24.070(1). The beneficiary may bid up to the amount of its secured obligation without paying the trustee additional sums by making a "credit bid":

> The trustee shall, at the request of the beneficiary, credit toward the beneficiary's bid all or any part of the monetary obligations secured by the deed of trust. If the beneficiary is the purchaser, any amount bid by the beneficiary in excess of the amount so credited shall be paid to the trustee. . . . If the purchaser is not the beneficiary, the entire bid shall be paid to the trustee.

RCW 61.24.070(2). The trustee shall apply the proceeds of the sale first to the expenses of the sale, including trustee and attorney fees, and second to the obligation secured by the deed of trust. RCW 61.24.080(1), (2). The trustee shall deposit the surplus proceeds, if any, with the clerk of the superior court of the county in which the sale took place. RCW 61.24.080(3). "A

second deed of trust beneficiary has a superior interest in the surplus over the borrower." *Giannusa*, 169 Wn. App. at 908.

New Enterprises defaulted on its obligation to repay the Hayeses under the terms of the speculative loan agreement and the promissory note. Because the obligation was secured by a deed of trust, the Hayeses, as the beneficiaries of the deed of trust, commenced nonjudicial foreclosure proceedings under RCW 61.24. The notice of trustee's sale, which was sent to the Kuty Trust, clearly stated the default amount due was $63,724.62, which was based on a calculation of principal, interest, and late charges. The trustee provided the Kuty Trust with copies of the check and wire transfer evidencing the $40,000 principal loan disbursements when the Kuty Trust's attorneys requested such evidence.

The Hayeses' bid was the only bid at the trustee's sale. The Kuty Trust did not bid. At the Hayeses' direction, the trustee credited them with the entire outstanding obligation as their opening bid. There were no other bids, so the Hayeses' credit bid was successful. The trustee's declaration stated, "[T]here were no monies, let alone an[y] surplus monies paid to me at the sale." CP at 278.

The Kuty Trust alleges that the trial court erred by granting summary judgment on its accounting claim against the Hayeses because genuine issues of material fact existed about the value of the note, price at the trustee's sale, and the postsale apportionment of proceeds. But a genuine issue of material fact does not exist here—notwithstanding the Kuty Trust's dispute about the note, price, and distribution of proceeds—because the disputed facts do not control the outcome of this claim. *See Ranger Ins.,* 164 Wn.2d at 552.

The Hayeses had no obligation to account for the proceeds of the trustee's sale. It is the duty of the trustee to collect proceeds of the sale and treat them in accordance with the statutory

13

provisions. RCW 61.24.070, .080. The Hayeses were beneficiaries of the deed of trust and the buyers at the trustee's sale, but they were not the trustee. Thus, we hold that the Kuty Trust's claim for an accounting from the Hayeses fails as a matter of law, and it was properly dismissed on summary judgment.

Even if the Hayeses had a duty to account for the proceeds of the sale or if the Kuty Trust had sued the trustee for an accounting, the undisputed record shows that the trustee's sale did not generate surplus proceeds. Thus, there were no surplus proceeds to account for and no proceeds that the Kuty Trust could claim based on their junior security interest foreclosed by the sale.

The Kuty Trust's theory is that the Hayeses tendered their deed of trust and/or promissory note (both stating that the debt was $238,000) to purchase the property at the trustee's sale.[11] The Kuty Trust argues that because the Hayeses were only owed the amount distributed on the loan ($40,000 principal plus interest and late charges for a total of $63,724.62), the remainder of the "proceeds" (approximately $174,000) should have been available to satisfy the second-position secured interest of the Kuty Trust. The Kuty Trust argues that the face value of the note and the price at the foreclosure sale are disputed and, thus, summary judgment on the accounting claim was improperly granted. But this is not a true factual dispute. The Hayeses do not dispute that the deed of trust and promissory note both state a face amount of $238,000. And the Kuty Trust's allegation of the purchase price being disputed is based solely on its understanding that the deed of trust and/or promissory note was "tendered" to purchase the property at the trustee's sale. But the Kuty Trust does not present any personal knowledge of the trustee's sale. Thus, Robert Hayes' and the trustee's testimony about the sale is factually undisputed.

---

[11] The Kuty Trust oscillates between alleging that the Hayeses tendered their promissory note, the deed of trust, or both, as payment at the trustee's sale.

14

No. 42811-3-II

Any dispute stems from the Kuty Trust's misplaced focus on the "face value" of the promissory note and/or deed of trust and its mischaracterization of the Hayeses' credit bid. As the Hayeses point out, the "face value" of the deed of trust or promissory note is not relevant under the statutes governing nonjudicial foreclosure.

RCW 61.24.040(1)(f) requires the trustee to state the "sum owing on the obligation secured by the [d]eed of [t]rust" in the notice of sale. Here, New Enterprises owed the Hayeses the principal amount of the loan ($40,000) plus interest, default interest, and a late charge, which totaled $63,724.62 at the time of the notice of sale. The $238,000 listed on the deed of trust is irrelevant to the foreclosure proceeding because it was not the amount in default at the time of foreclosure.

At the foreclosure sale, the Hayeses instructed the trustee to make a credit bid in the amount of the monetary obligations secured by the deed of trust, as provided in RCW 61.24.070. The monetary obligation secured by the deed of trust was only $63,724.62, so their credit bid could not exceed that amount. *See* RCW 61.24.070. The undisputed testimony from Robert Hayes and the trustee is that the Hayeses did not "tender" their deed of trust or promissory note as payment.

Moreover, tender of a promissory note or deed of trust is not one of the forms of payment at a trustee's sale authorized by statute. RCW 61.24.070(2) (amounts must be paid to the trustee in the form of cash, certified check, cashier's check, money order, or funds received by verified electronic transfer). The Hayeses' credit bid was the sole bid at the trustee's sale and, thus, it was the winning bid. The Kuty Trust's allegation that the purchase price at the sale was $238,000 is not supported by any evidence.

15

Because the Hayeses' winning bid was not in excess of their credit bid, they were not required to pay any amount to the trustee. *See* RCW 61.24.070(2). Thus, the trustee could not have received any surplus sale proceeds to deposit with the superior court for ultimate disbursement to second-position secured parties whose interest was foreclosed by the sale. *See* RCW 61.24.080. Accordingly, even if the Kuty Trust had sought an accounting of foreclosure proceeds from the correct party, there are no genuine material facts in dispute and we hold as a matter of law that there are no funds for which to account because the trustee's sale did not generate any surplus proceeds. Thus, the trial court did not err by dismissing the Kuty Trust's claim for an accounting on summary judgment

B. Successor Liability Claim

The Kuty Trust also assigns error to the trial court's order granting summary judgment to Columbia River Properties and denying the Kuty Trust's motion for summary judgment on its claim that Columbia River Properties was liable as a successor company of D.C. Inc.[12] In its opening brief on appeal, the Kuty Trust argues that the trial court erred and asks us to reverse and remand to the trial court with directions to enter judgment against Columbia River Properties. But in its reply brief, the Kuty Trust states that the trial court erred by resolving key factual disputes and it requests that we reverse and remand to the trial court for trial on its successor liability theories.

We decline to address the arguments made in the Kuty Trust's reply brief because they were not preserved and are too late to warrant consideration. RAP 2.5(a); *Cowiche Canyon*

---

[12] After Columbia River Properties moved for summary judgment, the Kuty Trust filed a combination response and cross motion for summary judgment. The Kuty Trust agreed that the material facts were undisputed and that the issue should be resolved on summary judgment, but the Kuty Trust argued that the trial court should grant summary judgment in its favor.

*Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Thus, we address only whether the trial court erred by granting Columbia River Properties' motion for summary judgment rather than the Kuty Trust's motion for summary judgment.

The parties dispute whether Columbia River Properties is liable for judgments against D.C. Inc. based on some apparent connections between Columbia River Properties and D.C. Inc. Fry incorporated D.C. Inc. in 1998. Fry owned all corporate stock of D.C. Inc. and was its president until he sold his entire interest in the corporation to Mike and Gerry Mullen and relocated to California in December 2004. The Mullens purchased D.C. Inc. for $105,000, for which Fry took a promissory note. Fry did not hold any corporate position in D.C, Inc. while he was in California. In California, Fry worked in a few real estate brokerages, including running a property management office for two years. During the four years that Fry lived in California, his contact with the Mullens and D.C. Inc. was limited to a handful of social visits when he was in the area.

At the end of 2008, Fry was considering leaving California and began to search for a job in Washington or Oregon. Fry contacted D.C. Inc. to ask about a job and learned that D.C. Inc. needed a property manager because the previous manager had quit.[13] In February 2009, Fry returned from California and began work for D.C. Inc. as manager of its property management division. Fry did not acquire any shares of D.C. Inc., but he was appointed as the corporate secretary and a signatory on the corporate bank account so that he could manage the business while the Mullens were on vacation.

---

[13] Property management entails managing property for owners, including collecting rents and coordinating maintenance, rather than facilitating sales.

D.C. Inc. was struggling financially by the time Fry returned from California. Creditors called the office on a regular basis, and it was clear to Fry that the business was headed in the wrong direction. Fry decided to open his own real estate and property management business. He incorporated Columbia River Properties in May 2009 and quit working for D.C. Inc. The Mullens allowed Fry to use D.C. Inc.'s commercial address to incorporate Columbia River Properties as a courtesy and convenience because Fry was still working at D.C. Inc. and did not yet have commercial space of his own. Columbia River Properties was issued a real estate license on June 30, 2009. When Columbia River Properties opened for business on August 1, 2009, it opened at a new and separate location from D.C. Inc. The Mullens informed Fry that they closed down D.C. Inc., but Fry was not involved in the process.

Generally, a corporation purchasing the assets of another corporation does not become liable for the debts and liabilities of the selling corporation. *Cambridge Townhomes, LLC v. Pac. Star Roofing, Inc.*, 166 Wn.2d 475, 481-82, 209 P.3d 863 (2009). But the general rule does not apply if: "(1) there is an express or implied agreement for the purchaser to assume liability; '(2) the purchase is a de facto merger or consolidation; (3) the purchaser is a mere continuation of the seller; or (4) the transfer of assets is for the fraudulent purpose of escaping liability.'" *Cambridge Townhomes*, 166 Wn.2d at 482 (quoting *Hall v. Armstrong Cork, Inc.*, 103 Wn.2d 258, 261-62, 692 P.2d 787 (1984)).

In *Meisel v. M & N Modern Hydraulic Press, Co.*, our Supreme Court considered whether liability should be imposed against Modern Hydraulic Corporation (Modern) based on its connection to M & N Modern Hydraulic Press Company (M & N). 97 Wn.2d 403, 404-05, 645 P.2d 689 (1982). M & N manufactured hydraulic presses. *Meisel*, 97 Wn.2d at 404-05. Nicholas Brodsky, Jr. owned 99 percent of M & N's corporate stock shares, and he personally

18

owned the land, buildings, and equipment that M & N leased to conduct its manufacturing activities. *Meisel*, 97 Wn.2d at 404. Brodsky transferred all of his M & N stock back to the corporation and to his mother for consideration. *Meisel*, 97 Wn.2d at 404. Brodsky then incorporated Modern and became its sole officer and shareholder. *Meisel*, 97 Wn.2d at 404. Brodsky terminated M & N's leases and then leased his equipment, land, and buildings to Modern, which commenced manufacturing a custom line of hydraulic presses. *Meisel*, 97 Wn.2d at 404-05. M & N stopped manufacturing when Brodsky terminated its leases, but it continued to service its machines and collect accounts receivable. *Meisel*, 97 Wn.2d at 405. M & N was later dissolved. *Meisel*, 97 Wn.2d at 405.

The plaintiff, Meisel, was injured while operating equipment that her employer had purchased from M & N. *Meisel*, 97 Wn.2d at 405. Meisel sued M & N, which dissolved shortly after commencement of the suit, and Modern under multiple successor liability theories. *Meisel*, 97 Wn.2d at 405. On appeal from summary judgment dismissal of Meisel's claims against Modern, our Supreme Court rejected Meisel's initial characterization of Modern as a successor company of M & N and, thus, did not analyze whether the case fit within an exception to the general rule of nonliability for corporate successors. *Meisel*, 97 Wn.2d at 405, 407.

The Court held that an essential prerequisite to the entire inquiry was whether there was a transfer of assets from M & N to Modern. *Meisel*, 97 Wn.2d at 407. The Court held that Modern was not a successor corporation because none of M & N's assets were transferred to Modern. *Meisel*, 97 Wn.2d at 409. Although Modern used the same land, buildings, and equipment that M & N used, those assets did not belong to M & N; they belonged to Brodsky personally. *Meisel*, 97 Wn.2d at 409. Brodsky had merely divested himself of ownership of M & N and began a new corporation. *Meisel*, 97 Wn.2d at 409.

Similarly, Columbia River Properties is not a successor of D.C. Inc. because there was no meaningful transfer of assets from Columbia River Properties to D.C. Inc. Columbia River Properties purchased two file cabinets from D.C. Inc. for $50 each, but it acquired no other equipment. Fry explained that D.C. Inc. did not transfer its clients to Columbia River Properties. Fry had to pursue the clients and convince them to sign with him at Columbia River Properties.

D.C. Inc. did not, and could not, transfer its real estate listing agreements or property management contracts to Columbia River Properties.[14] Fry explained that a licensed real estate broker cannot transfer a listing agreement to another brokerage without the property owner's consent. A listing stays with a broker until it expires or is cancelled by both parties. But "[a]s D.C., Inc. wound down and closed its business, it terminated management contracts and listing agreements." CP at 504. Columbia River Properties was able to obtain some of that business, but in each case, the property owner was free to contract with any licensed brokerage. Fry testified that there were not a significant number of re-signings, maybe one or two.

Columbia River Properties did acquire 25 to 30 property management contracts that were formerly held by D.C. Inc. Fry testified that D.C. Inc.'s property management contracts were primarily month to month transactions. Fry had to pursue the clients and convince them to sign with him at Columbia River Properties. Fry called the clients, told them about his new company, and asked them to sign with him at Columbia River Properties. He did not tell them that D.C. Inc. was closing, but he knew that D.C. Inc. was informing its clients that it was closing down. He also noted that many of the clients were clients that Fry had initially acquired when he owned D.C. Inc.

---

[14] D.C. Inc.'s business was primarily real estate sales, but it also had a property management division that accounted for 20 to 25 percent of its gross income.

When D.C. Inc. closed down, Fry offered the former D.C. Inc. real estate agents and employees jobs at Columbia River Properties. The majority of real estate agents working for D.C. Inc. at the time it closed, including Gerry Mullen, joined Columbia River Properties. A former bookkeeper and a former maintenance person also came to work at Columbia River Properties. But the real estate agents and employees were not transferred from D.C. Inc. to Columbia River Properties.

The Kuty Trust alleges that Columbia River Properties acquired D.C. Inc.'s webpage, telephone number, and goodwill. The website for D.C. Inc. and Columbia River Properties looked nearly identical, but Fry declared that he did not acquire D.C. Inc.'s website. When Fry was the owner of D.C. Inc. he used a company to design his website, and when he started Columbia River Properties, he called the same company and asked them to make him a new website using a template similar to the one they had previously designed for him. The websites have separate domain names. Fry asked Mullen if he would be abandoning D.C. Inc.'s telephone number when it closed down. Mullen agreed to sign a release of the numbers with Comcast. There is no evidence that Fry acquired D.C. Inc's goodwill; the most obvious sources of goodwill—business name and location—are unique.

The Kuty Trust argues that these facts show that Columbia River Properties is a "mere

continuation" of D.C. Inc.[15] Br. of Appellant at 44. To determine whether a successor business is a mere continuation of the seller business, we consider two factors: (1) whether there is a common identity between the officers, directors, and stockholders of the selling and purchasing companies and (2) the sufficiency of the consideration running to the seller corporation in light of the assets being sold.[16] *Cambridge Townhomes*, 166 Wn.2d at 482. Our objective is to discern whether the "'purchaser represents merely a new hat for the seller.'" *Cambridge Townhomes*, 166 Wn.2d at 482 (internal quotation marks omitted) (quoting *Cashar v. Redford*, 28 Wn. App. 394, 397, 624 P.2d 194 (1981)).

But under the facts of this case, the Kuty Trust did not present any evidence demonstrating that D.C. Inc. made a meaningful transfer of assets to Columbia River Properties. Without a transfer of assets, Columbia River Properties is not a successor company of D.C. Inc. *See Meisel*, 97 Wn.2d at 407 (recognizing that the general rule of no successor liability and the

---

[15] At the trial court, the Kuty Trust also briefly addressed two other exceptions: express or implied agreement to assume liabilities and the transfer of assets for a fraudulent purpose of escaping liabilities. But in its opening brief on appeal, the Kuty Trust focuses solely on the "mere continuation" exception. In its reply brief, the Kuty Trust states that three of the four exceptions apply—express or implied assumption of liability, mere continuation, and fraudulent transfer—but provides argument only on the "mere continuation" exception. Reply Br. of Appellant at 13. We do not address the implied or express agreement to assume liabilities or the fraudulent purpose exceptions alluded to in the Kuty Trust's reply brief because arguments raised for the first time in a reply brief are too late to warrant consideration, and the arguments first mentioned in the reply brief are not developed or supported by citations to authority or the record. RAP 10.3(a)(6); *Cowiche Canyon Conservancy*, 118 Wn.2d at 809; *Howell v. Spokane & Inland Empire Blood Bank*, 117 Wn.2d 619, 624, 818 P.2d 1056 (1991).

[16] Division One added a third part to the test—whether there is a transfer of all or substantially all of the predecessor corporation's assets. *Gall Landau Young Const. Co. v. Hedreen*, 63 Wn. App. 91, 97, 816 P.2d 762 (1991). In *Eagle Pacific Insurance Co. v. Christensen Motor Yacht Corp.*, 85 Wn. App. 695, 706 n.1, 934 P.2d 715 (1997), *aff'd*, 135 Wn.2d 894, 959 P.2d 1052 (1998), we rejected the addition of a third element and applied the traditional two-factor test. In 2009, in *Cambridge Townhomes*, our Supreme Court applied the traditional two-factor test without discussing a third factor. 166 Wn.2d at 482.

exceptions to the general rule presuppose a transfer, in some form, of assets from one business to another). Because Columbia River Properties is not a successor company of D.C. Inc., application of the "mere continuation" analysis is inappropriate and flawed. *See Meisel*, 97 Wn.2d at 405, 407, 409. For example, the first factor, which compares the identity of officers, directors, and stockholders, presupposes that the comparison will be between the "selling" and "purchasing" corporations. *Cambridge Townhomes*, 166 Wn.2d at 482. Moreover, the second factor is whether the selling corporation received adequate consideration for the transfer of its assets. *See Cambridge Townhomes*, 166 Wn.2d at 482. When there is no sale or transfer of assets, these factors do not apply. Thus, we hold that the trial court did not err by finding that Columbia River Properties was not liable as a successor corporation to D.C. Inc.

In sum, the trial court properly granted summary judgment dismissal of the Kuty Trust's claim against Columbia River Properties and its claim against the Hayeses for an accounting of the trustee's sale proceeds. As further discussed in the unpublished portion of this opinion, we affirm the trial court on the remaining issues and award attorney fees on appeal to the Hayeses.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

III.    SUMMARY JUDGMENT DISMISSAL OF REMAINING CLAIMS WAS APPROPRIATE

The Kuty trust also appeals the trial court's summary judgment dismissal of its claims for unjust enrichment, fraud, and civil conspiracy against Robert and Daniele Hayes.

A.    Unjust Enrichment Claim

The Kuty Trust argues that there is a "triable" case on its unjust enrichment claim. Br. of Appellant at 34. Although the Kuty Trust does not formally assign error to any trial court ruling

on this issue or discuss an alleged error of the trial court, it appears that the Kuty Trust is arguing that the trial court erred by granting summary judgment dismissal of its unjust enrichment claim against the Hayeses. But the Kuty Trust's complaint does not allege an unjust enrichment claim. The Kuty Trust argues that it amended its complaint to add an unjust enrichment claim against the Hayeses. The Hayeses argue that an unjust enrichment claim was not before the trial court.

The Kuty Trust amended its original complaint to add a section titled "Accounting of Foreclosure Proceeds." CP at 266 (boldface omitted). Our review of the complaint, amended complaint, and second amended complaint does not reveal anything approximating an unjust enrichment claim. In its reply brief, the Kuty Trust argues that the unjust enrichment claim was raised below because it is essentially the same as the accounting claim—it is merely "a second perspective on the fundamental claim about the distribution of the proceeds of the foreclosure sale." Reply Br. of Appellant at 4. The Kuty Trust does not provide authority to support this characterization.

We do not address the Kuty Trust's unjust enrichment claim because the Kuty Trust did not present it to the trial court and does not otherwise argue that preservation was not required. *See* RAP 2.5(a) (stating that generally an issue cannot be raised for the first time on appeal unless it is a "manifest error affecting a constitutional right"); *Giannusa,* 169 Wn. App. at 912.

B. Fraud and Civil Conspiracy Claims

The Kuty Trust also assigns error to the trial court's summary judgment dismissal *with prejudice* of its claims for fraud and civil conspiracy against the Hayeses. The Kuty Trust concedes that the claims were improbable and, thus, dismissal was proper; but the Kuty Trust argues that the trial court should have dismissed the claims without prejudice to allow refiling if subsequent discovery revealed evidentiary support for the claims.

Although the Kuty Trust assigned error and framed a question regarding the alleged error, it did not devote any portion of its opening brief to this issue, nor did it discuss, cite to the record, or cite authority related to dismissal with prejudice rather than without prejudice. The Hayeses noted in their response brief that the Kuty Trust appeared to abandon the issue. We agree.

We will not address an assignment of error that appears abandoned. RAP 10.3(a)(6) (appellate brief should contain argument supporting issues presented for review, citations to legal authority, and references to relevant parts of the record); *Howell v. Spokane & Inland Empire Blood Bank*, 117 Wn.2d 619, 624, 818 P.2d 1056 (1991) (assignment of error unsupported by legal argument will not be considered on appeal). For the first time in its reply brief, the Kuty Trust provides argument that the fraud and civil conspiracy claims against the Hayeses should not have been dismissed with prejudice because the Hayeses were potentially liable parties—i.e., although discovery had not produced any evidence to support the claims against the Hayeses, neither had it disproved the claim. We will not consider an issue raised for the first time in a reply brief. *Cowiche Canyon Conservancy*, 118 Wn.2d at 809 (stating that an issue raised and argued for the first time in a reply brief is too late to warrant consideration).[17]

Thus, we do not address the assignment of error because the Kuty Trust waived it by not developing an argument supporting its assignment of error in its opening brief, the issue was first

---

[17] But even if we addressed the Kuty Trust's argument, the Kuty Trust fails to inform us how the Hayeses' potential liability affects the trial court's analysis of a summary judgment motion. Nor did the Kuty Trust provide authority or analysis related to its request for voluntary dismissal. The Kuty Trust alleges without authority that the trial court "should have allowed further discovery into those claims and should have allowed the [Kuty] Trust to assert or dismiss the claims based on the outcome of that discovery." Reply Br. of Appellant at 6. Generally, without argument and citation to authority, we will not review an assignment of error. RAP 10.3(a)(6); *Howell*, 117 Wn.2d at 624.

addressed in its reply brief and, even in the reply brief, the argument and authority was inadequate. *See* RAP 10.3(a)(6); *Cowiche Canyon Conservancy*, 118 Wn.2d at 809; *Howell*, 117 Wn.2d at 624.

IV.   CR 11 SANCTIONS AND RCW 4.84.185 ATTORNEY FEES AND COSTS

After the claims against the Hayeses were dismissed on summary judgment, the Hayeses requested attorney fees and costs under CR 11 and RCW 4.84.185, alleging that the Kuty Trust's claims against the Hayeses were frivolous and filed without a reasonable prefiling inquiry. The Hayeses' attorney presented a declaration detailing his experience and hourly rate and attached a billing invoice detailing costs and his time spent defending the Hayeses. The Kuty Trust opposed the motion for attorney fees and costs, arguing that it did not violate CR 11 and RCW 4.84.185 because its attorney conducted an elaborate and detailed approximately six week long investigation before filing the action. The Kuty Trust's attorney filed a declaration explaining his prefiling investigation.[18] Further, the Kuty Trust noted that it did not oppose dismissal of the fraud and civil conspiracy claims against the Hayeses once discovery and investigation in another case cast doubt on the Hayeses' involvement in the alleged scheme.[19] Thus, the Kuty Trust argued that the claims against the Hayeses were not frivolous when filed or litigated.

---

[18] We discuss the attorney's declaration in the analysis of attorney fees.

[19] The Kuty Trust served discovery requests that included interrogatories on the Hayeses at the time it filed the complaint, but the Hayeses moved for summary judgment before answering the discovery requests. The Hayeses provided answers to the interrogatories only after claims survived the first summary judgment motion. After the Kuty Trust received new information in a different case—not involving the Kuty Trust or the parties on appeal—and the Hayeses' answers to interrogatories denying involvement in the alleged scheme under penalty of perjury, the Kuty Trust did not oppose the Hayeses' summary judgment motion and conceded that the civil conspiracy and fraud claims against the Hayeses should be dismissed.

In the alternative, the Kuty Trust argued that the Hayeses' fee request should not be granted in its entirety because the Hayeses' late discovery substantially increased fees on both sides. The trial court granted the Hayeses' motion for attorney fees under CR 11 and RCW 4.84.185. The court ordered the Kuty Trust and its counsel to pay $7,265.20 for attorney fees and costs incurred in responding to the Kuty Trust's claims.

The Kuty Trust assigns error to the trial court's imposition of attorney fees and costs under CR 11 and RCW 4.84.185 for filing a frivolous lawsuit without a reasonable prefiling inquiry into the legal and factual basis for its suit against the Hayeses. The Kuty Trust also argues that even if the award of attorney fees was appropriate, the trial court erred by failing to do a proper lodestar analysis in determining the amount of the fees. We disagree.

A.  CR 11 Sanction and RCW 4.84.185 Fees and Costs

We review a trial court's award of attorney fees under RCW 4.84.185 or CR 11 for abuse of discretion and will reverse only if the trial court exercised its discretion on untenable grounds or for untenable reasons. *In re Recall Charges Against Lindquist*, 172 Wn.2d 120, 135-36, 258 P.3d 9 (2011). We review findings of fact for substantial evidence, which is a quantum of evidence sufficient to persuade a rational person that the premise is true. *Stiles v. Kearney*, 168 Wn. App. 250, 260, 277 P.3d 9, *review denied*, 175 Wn.2d 1016 (2012). Unchallenged findings of fact are verities on appeal. *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004).

Under RCW 4.84.185, in any civil action, a court may award attorney fees to the prevailing party if the action was "frivolous and advanced without reasonable cause." RCW 4.84.185. "'A lawsuit is frivolous when it cannot be supported by any rational argument on the law or facts.'" *Stiles*, 168 Wn. App. at 260 (internal quotation marks omitted) (quoting *Skimming v. Boxer*, 119 Wn. App. 748, 756, 82 P.3d 707 (2004)).

No. 42811-3-II

Under CR 11, an attorney's signature on a pleading, motion, or legal memoranda constitutes the attorney's certification that the attorney has

> read the pleading, motion, or legal memorandum, and that to the best of the . . . attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is well grounded in fact; (2) it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law.

CR 11 also provides:

> If a pleading, motion, or legal memorandum is signed in violation of this rule, the court . . . may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or legal memorandum, including a reasonable attorney fee.

"A trial court may not impose CR 11 sanctions for a baseless filing 'unless it also finds that the attorney who signed and filed the [pleading, motion, or legal memorandum] failed to conduct a *reasonable inquiry* into the factual and legal basis of the claim.'" *Stiles*, 168 Wn. App. at 261 (alteration and emphasis in original) (quoting *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 220, 829 P.2d 1099 (1992)). Courts evaluate an attorney's conduct and prefiling investigation using an objective standard that asks what was reasonable to believe at the time of the offending filing. *Stiles*, 168 Wn. App. at 261-62. To impose sanctions, the trial court must enter findings specifying the actionable conduct. *Stiles*, 168 Wn. App. at 262.

In its order granting attorney fees, the trial court made detailed findings of fact and

28

No. 42811-3-II

conclusions of law supporting its award.[20] We review the trial court's challenged findings of fact and conclusions of law. But the Kuty Trust failed to challenge any of the trial court's findings of fact.

---

[20] The trial court's findings of fact state:

1. The [Kuty Trust] and its attorney filed this lawsuit on July 2, 2008. In both the original complaint and the subsequent amended complaint, the [Kuty Trust] affirmatively alleged that Mr. Hayes, either directly or [illegible] agents, had made affirmative misrepresentations to the [Kuty Trust] prior to the [Kuty Trust]'s sale of property to the defendant New Enterprise[s], LLC. The [Kuty Trust] further alleged that the Hayes[es] and the other defendants had engaged in a "conspiracy" to commit "equity stripping fraud" to steal the [Kuty Trust]'s equity by first convincing the [Kuty Trust] to take a second deed of trust on the property, and then foreclosing a first deed of trust for an inflated amount beyond the amount actually loaned.

2. Over two months prior to filing this lawsuit the [Kuty Trust] requested evidence that the principal amount claimed due in the Hayes[es]' Notice of Foreclosure—which listed $40,000.00 in principal, $18,454.96 in interest and penalties, plus other costs and advances estimated to date in the amount of $2,001.40—had actually been loaned to the defendant New Enterprise[s]. On May 9, 2008, the Hayes[es]' attorney sent copies of documentation of the $40,000.00 in loan disbursements to the [Kuty Trust]'s then attorney.

3. On June 11, and again on June 12, 2008, the [Kuty Trust]'s current attorney wrote two more letters to the Hayes[es]' attorney, again requesting copies of the same documentation of the lending previously provided to [Kuty Trust]'s prior counsel. On June 19, 2008, the Hayes[es]' attorney forwarded copies of the same documentation to [the Kuty Trust]'s counsel.

4. Thus, long before the [Kuty Trust] filed its original complaint, much less its later amended complaint, the [Kuty Trust] and its attorney were aware that the Hayes[es] were seeking only to foreclose in the amount of the loan actually made, not some inflated amount as alleged in the complaint. Despite being aware that there was absolutely no factual basis for the alleged Hayes[es]' involvement in the "equity stripping fraud" complained of in the [Kuty Trust]'s complaint, the [Kuty Trust] and its attorney nonetheless filed this lawsuit against the Hayes[es].

5. On November 14, 2008 the [Kuty Trust] amended its complaint to include a claim for an accounting from the Hayes[es] of alleged proceeds from the trustee's sale. On January 30, 2009, the Court granted the Hayes[es]' motion for summary judgment and dismissed all of the [Kuty Trust]'s claims against them, including the claim for an accounting, as that claim was not only factually without merit—there having been no monies paid at the sale—it was directed at the wrong

29

Instead, the Kuty Trust asserts that its unsuccessful substantive claims are well-recognized causes of action in Washington and meritorious under the circumstances. And the Kuty Trust further asserts that its counsel carried out an elaborate prefiling investigation, directing us to its counsel's declaration explaining the prefiling investigation.[21] The Kuty Trust's

---

party, because only the trustee, not the beneficiary of a deed of trust or a purchaser at a trustee's sale, has any duty to account for surplus proceeds pursuant to the provisions of Chapter 61.24 RCW.

CP at 340-43. Based on its findings of fact, the trial court entered the following conclusions of law:

1. [The Kuty Trust]'s counsel failed to adequately investigate or make reasonable inquiry into the facts supporting the [Kuty Trust]'s complaint, and further ignored the facts he did obtain and included clearly false claims in the two complaints he filed in this matter. These actions constitute violations of Civil Rule 11.

2. The claims made by the [Kuty Trust] against the Hayes[es] in its complaints herein were frivolous and advanced without reasonable cause.

CP at 343.

[21] The Kuty Trust's counsel filed a declaration explaining his prefiling investigation. He stated that in March 2008, two individuals who had sold real property approached him independently with similar experiences in which they sold property for a small down payment and a second-position note and deed of trust for the balance of the sale price. The transactions were structured similarly and both resulted in the sellers losing their security interests in the property when the buyers quickly defaulted on the note secured by the first-position deed of trust. The attorney's investigation revealed that the transactions involved some of the same parties, including Endeavor. It appeared to the attorney that the buyers and lenders were colluding to strip the equity from the sellers in second-position. The lender in this case, LeGrand Investments, appeared to be related to Endeavor, the third party who structured the deal and drafted the documents, because it had used Endeavor in its own purchases and shared office space with Endeavor or had office space near Endeavor at one point.

In a different transaction, the owner of the defaulting buyer was a principal of and registered agent for Endeavor. The attorney also discovered that the owner of the corporate lender in one of the other transactions was primarily employed marketing an online tax avoidance scheme that appeared to be illegal and to have been incorporated into the real estate transactions the attorney was investigating. The attorney also learned of a third seller who had been involved in similar transaction and lost his security interest.

The attorney declared that he did as much investigation as he could do without formal discovery but that the evidence supported an argument that there was a scheme of intentional and fraudulent equity stripping through foreclosure in the transactions. He filed the lawsuit against all parties involved in the transactions, including the Hayeses, because the evidence suggested

brief merely reargues the merits of its substantive claims without addressing the trial court's findings of fact and conclusions of law.

As our Supreme Court has explained, this is an inappropriate approach on appeal:

> As a general principle, an appellant's brief is insufficient if it merely contains a recitation of the facts in the light most favorable to the appellant even if it contains a sprinkling of citations to the record throughout the factual recitation. It is incumbent on counsel to present the court with argument as to why specific findings of the trial court are not supported by the evidence and to cite to the record to support that argument. *See* RAP 10.3. For the most part counsel has not done this.
>
> Strict adherence to the aforementioned rule is not merely a technical nicety. Rather, the rule recognizes that in most cases, like the instant, there is more than one version of the facts. If we were to ignore the rule requiring counsel to direct argument to specific findings of fact which are assailed and to cite to relevant parts of the record as support for that argument, we would be assuming an obligation to comb the record with a view toward constructing arguments for counsel as to what findings are to be assailed and why the evidence does not support these findings. This we will not and should not do.

*In re Estate of Lint*, 135 Wn.2d 518, 531-32, 957 P.2d 755 (1998).

Here, the trial court found that the Kuty Trust's fraud and civil conspiracy claims were not factually supported because the Hayeses were seeking to foreclose the amount of the loan actually made, not an inflated amount as alleged in the complaint, and that the Kuty Trust knew that there was no factual basis for the Hayeses' involvement in the alleged scheme.

The trial court also found that the claim for accounting of proceeds was not factually or legally supported because there were no monies paid at the sale and because the Hayeses had no duty to account for proceeds of the trustee's sale. Finally, the trial court found that the Kuty Trust's counsel "failed to adequately investigate or make reasonable inquiry into the facts

---

concerted efforts among all defendants. He concedes that he did not have direct evidence of the Hayeses' involvement in the sale of the Kuty Trust property, but that the Hayeses appeared to be the principal beneficiary of the equity stripping scheme because they got the property for a fraction of its value. This strongly suggested to the attorney that the Hayeses were involved in the scheme even though they purchased the lender's interest after the initial sale and loan.

supporting the [Kuty Trust]'s complaint, and further ignored the facts he did obtain and included clearly false claims in the two complaints he filed in this matter."[22] CP at 343.

We hold that the unchallenged findings of fact support the trial court's conclusions that the Kuty Trust's counsel violated CR 11 and that the Kuty Trust's claims were frivolous and advanced without reasonable cause. Because the trial court's imposition of sanctions was not unreasonable or based on untenable grounds, we affirm it. *Stiles*, 168 Wn. App. at 263.

B. Amount of the Attorney Fee Award

The Kuty Trust also argues that the trial court erred by failing to do a lodestar analysis to determine the amount of attorney fees to award. We disagree.

Under the lodestar methodology, the trial court must determine the reasonable number of hours expended by counsel and the reasonableness of the hourly rate of counsel. *Mahler v. Szucs*, 135 Wn.2d 398, 435, 957 P.2d 632, 966 P.2d 305 (1998). The lodestar fee is calculated by multiplying the reasonable hourly rate by the reasonable hours incurred by counsel. *Mahler*, 135 Wn.2d at 435. In *Mahler*, our Supreme Court reaffirmed that an adequate record upon which to review a fee award is required and held that findings of fact and conclusions of law are required to establish such a record. 135 Wn.2d at 435.

Here, the Hayeses' attorney requested fees and costs, stated his qualifications and customary hourly rate, and attached a timesheet detailing his work on the case and costs incurred. The Hayeses' attorney had been practicing law since 1993 and was a partner in his law firm. His hourly rate was $250.00, which he believed to be reasonable and customary for his level of experience in the community, but he had billed the Hayeses only $225.00 per hour. He

---

[22] The trial court erroneously labeled this finding of fact a conclusion of law, but we review it as a finding of fact regardless of its label. *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

32

declared that he had spent 28.40 hours on the matter resulting in $6,390.00 in fees and $285.20 in costs. He had also spent an additional 2.5 hours preparing the Hayeses' motion for attorney fees and costs, and he anticipated spending another 4 hours reviewing the Kuty Trust's response pleadings, preparing a reply, and appearing for the argument for an additional $1,462.50.

In its oral ruling, the trial court determined that $200 was a reasonable hourly rate for the locale. The trial court also found that the hours requested were reasonable. The trial court explained its attorney fee award on the record, but it did not make written findings of fact and conclusions of law.

Although the trial court did not include its calculation in its written findings of fact and conclusions of law, its oral findings and conclusions of law are sufficient for our review. The oral record is clear, and the Kuty Trust does not allege that the hourly rate was unreasonable or that the hours credited by the court were unreasonable. We do not require the unnecessary step of remanding to the trial court to amend its written findings of fact to include the analysis when the analysis is clear from the record and there is no substantive challenge to the court's analysis.

V. ATTORNEY FEES AND COSTS ON APPEAL

The Hayeses request attorney fees and costs under RAP 18.9(a), which permits such an award against a party who files a frivolous appeal. "An appeal is frivolous under RAP 18.9 if it raises no debatable issues and is so devoid of merit that there is no reasonable possibility of reversal." *Andrus v. Dep't of Transp.*, 128 Wn. App. 895, 900, 117 P.3d 1152 (2005).

We hold that the Kuty Trust's appeal against the Hayeses is frivolous. The Kuty Trust's appeal on their claim for an accounting of foreclosure proceeds is factually and legally without merit because the Hayeses had no duty to account for proceeds of a trustee's sale and, even if

they did, the undisputed evidence shows that the Hayeses purchased the property on a credit bid so there were no proceeds to account for.

The Kuty Trust's appellate arguments related to its unjust enrichment, civil conspiracy, and fraud claims were not preserved, presented too late to warrant consideration, or inadequately briefed. Finally, the trial court's unchallenged findings of fact clearly supported its conclusion that the Kuty Trust and its counsel violated CR 11 and supported an award of fees and costs under RCW 4.84.185 by filing claims against the Hayeses that were frivolous and advanced without reasonable care. The trial court did not enter written findings of facts and conclusions of law demonstrating its lodestar analysis for the fee award, but its oral decision is sufficient to review its analysis and the Kuty Trust does not allege that the trial court's determination of counsel's hourly rate or time spent was unreasonable.

The Kuty Trust presented no debatable point of law and the chance for reversal was nonexistent. Thus, the Kuty Trust's appeal against the Hayeses is frivolous and supports an award of reasonable appellate fees and costs to the Hayeses, which a commissioner shall determine upon compliance with RAP 18.9(a).

We affirm the trial court and award attorney fees on appeal to the Hayeses.

VAN DEREN, J.P.T.

We concur:

PENOYAR, J.

WORSWICK, C. J.

34