[No. 56245–8.   En Banc.   July 12, 1990.]

CERTIFICATION FROM THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
IN
WASHINGTON MUTUAL SAVINGS BANK, *Appellee,* v. THE
UNITED STATES OF AMERICA, *Appellant.*

*Shirley D. Peterson,* Assistant Attorney General; *John E. Lamp,* United States Attorney; and *Gary R. Allen, Robert S. Pomerance, Joan I. Oppenheimer,* and *Carroll D. Gray,* Assistant United States Attorneys, for appellant.

*Paine, Hamblen, Coffin, Brooke & Miller,* by *Diane M. Hermanson,* for appellee.

Andersen, J.—

## Facts of Case

The Ninth Circuit Court of Appeals has asked this court to determine whether Washington law allows a nonforeclosing junior lienholder who purchases property at a nonjudicial foreclosure sale to sue for a deficiency.

This case concerns an action to quiet title to real property on which the United States claims a federal tax lien. The property in question is located in Benton County and was owned by Robert and Christine Shell. Yakima Federal Savings & Loan Association (Yakima Federal) held a first deed of trust on the property in the amount of $41,000 as security on a loan to the Shells (hereinafter "the debtors"). Washington Mutual Savings Bank (Washington Mutual) held a second deed of trust with a balance of $29,800, also as security for a loan. The Internal Revenue Service (IRS) had a $150,000 tax lien on the property that was junior to both deeds of trust.

During 1985 and 1986, the debtors defaulted on their loans from Yakima Federal and Washington Mutual. Yakima Federal started a foreclosure action in 1985 and in 1986 Washington Mutual began nonjudicial foreclosure proceedings pursuant to RCW 61.24.

In March 1986, the debtors filed for bankruptcy and an automatic stay went into effect. Yakima Federal sought and obtained relief from the stay and foreclosed its deed of trust by a nonjudicial foreclosure sale. In order to protect its second deed of trust, Washington Mutual purchased the property for $42,020.63, the amount owing on Yakima Federal's deed of trust. The fair market value of the property at the time of foreclosure was $64,000.

The IRS then indicated its intention to redeem the property from Washington Mutual for $42,020.63. Washington Mutual responded that it considered the correct amount payable to it on redemption as either (a) $71,820.63, which consisted of the purchase price ($42,020.63) plus Washington Mutual's deed of trust

($29,800) or (b) $64,000, the fair market value of the property at the time of foreclosure.

On September 23, 1986, the IRS tendered $42,849.53 to Washington Mutual, which was the purchase price of $42,020.63 plus interest. Washington Mutual then commenced this action, seeking a determination of the redemption price and requesting that title be quieted in Washington Mutual if the IRS did not redeem at the court–established price.

Both parties moved for summary judgment. The District Court granted summary judgment for Washington Mutual, agreeing that the redemption price equaled $64,000 plus interest. The court denied Washington Mutual's request to quiet title but granted leave to renew that request if the IRS refused to pay the ordered redemption price.

The IRS filed a notice that it did not intend to redeem the property for $64,000 plus interest. The District Court then quieted title to the property in Washington Mutual.

The IRS appealed and subsequently filed a motion for certification to this court. The Ninth Circuit Court of Appeals granted the motion and, pursuant to RCW 2.60-.020, entered an order certifying the following question to us.

### QUESTION CERTIFIED

In Washington, may a nonforeclosing junior lienor who purchases property at a nonjudicial foreclosure sale sue for a deficiency under Washington law, and, if so, what is the manner of computing the deficiency?

### OUR ANSWER

We conclude that there is no authority in Washington law for allowing any lienholder to sue for a deficiency following a nonjudicial foreclosure sale.

The Internal Revenue Code authorizes the United States to redeem from the purchaser at a nonjudicial foreclosure sale real property subject to federal tax liens.[1] The government may redeem the property within 120 days after the

---

[1] 26 U.S.C. § 7425(d)(1) (1986).

sale by paying the amount specified in 28 U.S.C. § 2410(d) (1978). Under § 2410(d), the redemption price is defined as follows:

> (1) the actual amount paid by the purchaser at such sale (which, in the case of a purchaser who is the holder of the lien being foreclosed, shall include the amount of the obligation secured by such lien to the extent satisfied by reason of such sale),
>
> (2) interest on the amount paid (as determined under paragraph (1)) at 6 percent per annum from the date of such sale,
> . . .

The parenthetical clause in paragraph 1 of this federal statute is explained by the following section of the Treasury Regulations on Procedure and Administration:

> In the case of a purchaser who is the holder of the lien being foreclosed, the actual amount paid is the sum of (A) the amount of the obligation secured by such lien to the extent legally satisfied by reason of the sale and (B) any additional amount bid and paid at the sale. For purposes of this section, a purchaser who acquires title as a result of a nonjudicial foreclosure sale is treated as the holder of the lien being foreclosed if a lien (or any interest reserved, created, or conveyed as security for the payment of a debt or fulfillment of other obligation) held by him is partially or fully satisfied by reason of the foreclosure sale. . . . Where, after the sale, the holder of the lien being foreclosed has the right to the unpaid balance of the amount due him, the amount legally satisfied by reason of the sale does not include the amount of such lien to the extent a deficiency judgment may be obtained therefor.

26 C.F.R. § 301.7425–4(b)(2)(ii) (1986) (part).

In the present case, Washington Mutual is the holder of the lien being foreclosed for purposes of figuring the redemption price, since "a purchaser who acquires title as a result of a nonjudicial foreclosure sale is treated as the holder of the lien being foreclosed if a lien . . . held by him is partially or fully satisfied by reason of the foreclosure sale." It is also undisputed that the (B) portion of the amount paid, as described in the treasury regulation just quoted, is the price that Washington Mutual paid for the property at the sale. Thus, the only question remaining is the amount of (A), "the amount of the obligation secured by such lien to the extent legally satisfied by reason of the sale". As the regulation states, that amount does not

include the amount of the lien to the extent a deficiency judgment may be obtained therefor. In short, if Washington Mutual may obtain a deficiency judgment from the debtors on any portion of its lien, that amount is not satisfied by the foreclosure sale and is not included in the redemption price that the IRS must pay.

■ The extent to which a deficiency judgment may be obtained is solely a matter of state law.[2] Thus, in order for the federal court to determine the proper amount of (A), the amount of the obligation secured by Washington Mutual's lien that was satisfied by the foreclosure sale, we must determine whether Washington Mutual may obtain a deficiency judgment from the debtors and, if so, for what amount.

In their briefs before this court, both parties contend that Washington Mutual may obtain a deficiency judgment. They disagree, however, on how that judgment should be measured. The IRS contends that Washington Mutual may pursue a deficiency judgment for the full amount of the unpaid debt secured by its lien. This would mean that (A), the amount of the lien satisfied by the foreclosure sale, is zero, and thus a lower redemption price for the IRS. Washington Mutual, on the other hand, argues that the fair market value of the property purchased at the foreclosure sale must be credited to the unpaid debt, and that a deficiency may be obtained only in the amount by which the debt exceeds the fair market value. In the present case, the fair market value of the property ($64,000) exceeds the unpaid debt secured by Washington Mutual's lien ($29,800). Thus, under the bank's approach, the amount of any deficiency judgment would be zero and the amount of (A), the obligation satisfied by the sale, would be $29,800, the full amount of the unpaid debt. This would increase the redemption price paid by the IRS and allow Washington Mutual to recover in full on its lien.

---

[2]*Mikulec v. United States*, 705 F.2d 599, 601 (2d Cir. 1983); *Bank of Hemet v. United States*, 643 F.2d 661, 667 (9th Cir. 1981).

Washington law provides that no deficiency judgment may be obtained when a deed of trust is foreclosed.[3] In the present case, Yakima Federal and not Washington Mutual foreclosed on its deed of trust. The parties argue that the statutory bar to deficiency judgments following nonjudicial foreclosures applies only to foreclosing lienholders and not to a nonforeclosing junior lienholder who purchases the property to protect its lien at a nonjudicial foreclosure sale.

Washington law does allow a creditor to seek a deficiency judgment following a *judicial,* or mortgage, foreclosure.[4] Such a judgment may be limited to the excess of the debt over the upset price or fair market value of the property sold.[5] While Washington Mutual would apply a similar fair market value limitation here, the IRS argues that the fair market value limitation applies only to judicial foreclosures and is inapplicable in a nonjudicial foreclosure context.

■■ We do not deem it necessary to determine how a deficiency judgment should be measured in this case since we hold here that none may be obtained by a nonforeclosing junior lienor following a nonjudicial foreclosure sale. There is simply no statutory authority for allowing such a judgment following a nonjudicial, or deed of trust, foreclosure. Indeed, the title to RCW 61.24.100, part of the deeds of trust act, states flatly that "[d]eficiency decree precluded in foreclosure under this chapter". We decline to create an exception to this statutory bar by judicial fiat.[6]

The result of our refusal to allow a nonforeclosing junior lienholder to pursue a deficiency judgment following a nonjudicial foreclosure sale is that the IRS will have to pay the full amount of Washington Mutual's lien in order to redeem the property. Support for this result may be found,

---

[3]RCW 61.24.100.

[4]RCW 61.12.060.

[5]*McClure v. Delguzzi,* 53 Wn. App. 404, 406–07, 767 P.2d 146 (1989); *see also National Bank v. Equity Investors,* 81 Wn.2d 886, 924–25, 506 P.2d 20 (1973).

[6]*See King Cy. v. Seattle,* 70 Wn.2d 988, 991, 425 P.2d 887 (1967); *State v. Spino,* 61 Wn.2d 246, 249, 377 P.2d 868 (1963).

by analogy, in the redemption procedures set forth in Washington's mortgage foreclosure act.[7] In order to redeem property following a mortgage foreclosure sale, a lien creditor must pay off all prior liens on the property.[8] Thus, if the purchaser of the property was a creditor with a lien by judgment or mortgage which has priority over the lien of the redemptioner, the redemptioner, unless it is the judgment debtor, must also pay the amount of the purchaser's lien with interest.[9]

This is essentially the procedure that the IRS will have to follow if it wishes to redeem the debtors' property, given our holding that Washington Mutual may not sue the debtors for a deficiency judgment. If the IRS wishes to redeem, it will be required to pay the amount of Washington Mutual's lien with interest.

We do not herein address the matter of a junior deed of trust holder's continued right to sue the debtor on the promissory note because it is not before us.

We thus answer the question certified in the negative. A nonforeclosing junior lienholder who purchases property at a nonjudicial foreclosure sale may not sue for a deficiency.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, and SMITH, JJ., concur.

GUY, J. (concurring)—I concur in the majority opinion and result, but I wish to clarify that opinion to insure

---

[7]See Expert Drywall, Inc. v. Brain, 17 Wn. App. 529, 541, 564 P.2d 803 (1977) (quoting 2A C. Sands, Statutory Construction § 53.01 (4th ed. 1973)), review dismissed, 92 Wn.2d 1004 (1978):
> The practice of considering analogous legislation in the search for guidance as to how a doubtful statutory provision should be construed is supported by similar practices in other legal systems . . .

[8]RCW 6.23.020; see also 2 Washington State Bar Ass'n, Real Property Deskbook § 41.78, at 41–40 (1979).

[9]A. Guy, K. Osenbaugh, N. Barnes, & J. Riley, Washington Enforcing Real Property Security Interests, "Mortgage Foreclosures", at 228 (1986); Prince v. Savage, 29 Wn. App. 201, 205, 627 P.2d 966, review denied, 96 Wn.2d 1002 (1981).

understanding as to the rights of a junior deed of trust holder.

Washington law provides that no deficiency judgment may be obtained after a deed of trust foreclosure. However, where a junior deed of trust holder does not foreclose, that junior deed of trust holder is not precluded from suing under the note. *See Adams v. FedAlaska Fed. Credit Union,* 757 P.2d 1040 (Alaska 1988) where the Alaska Supreme Court permitted a creditor who held a second deed of trust on real property sold at a foreclosure sale to maintain a suit against the debtor on the promissory note, even though the creditor had no security interest on which to foreclose. In this case, Washington Mutual Savings Bank may bring action against the Shells for any balance owing under the promissory note in excess of the amount received by reason of the Internal Revenue Service redemption.

Reconsideration denied November 26, 1990.