[No. 41985-8-II.   Division Two.   August 8, 2012.]

*In the Matter of the Trustee's Sale of Real Property of*
JOHN B. GIANNUSA, SR.

*N. Brian Hallaq*; and *Jan Gossing* (of *BTA Lawgroup PLLC*), for appellant.

*John M. Casey* (of *Curran Law Firm*), for respondent.

¶1 Penoyar, J. — Complete Bowling Service Company held a second-position deed of trust against Norman Giannusa's property. Complete Bowling then purchased the property at the senior lienholder's trustee's sale.[1] Giannusa argues that since Complete Bowling purchased the property, it should be precluded from recovering the surplus

---

[1] Case law uses the phrases "trustee's sale" and "nonjudicial foreclosure sale" interchangeably. Consistent with the deeds of trust act, we use the phrase "trustee's sale." *See* RCW 61.24.005(17) (defining "trustee's sale" as "a nonjudicial sale under a deed of trust").

funds from the sale. Because RCW 61.24.080(3) plainly allows junior lienholders to recover surplus funds, we reject Giannusa's argument. Giannusa also argues that Complete Bowling's deed of trust merged when it obtained title to the property, but he did not preserve the argument below. We affirm.

## FACTS

¶2 Giannusa executed two deeds of trust against the subject property, securing two loans. Soundview Mortgage held the first, executed in July 2003, securing an $80,000 loan. This deed of trust was assigned to SunTrust Mortgage Company and then to Northwest Trustee Services Inc. Complete Bowling held the second, executed in January 2009, securing a $159,797.24 promissory note. Giannusa defaulted on both loans.

¶3 SunTrust nonjudicially foreclosed on its deed of trust, and Northwest Trustee Services, as successor trustee, held a trustee's sale under chapter 61.24 RCW. Complete Bowling purchased the property at the public sale for $97,000, which was $20,029.94 more than the amount owed to SunTrust. Northwest Trustee Services deposited the surplus funds in the superior court registry and gave notice to all interested parties.

¶4 Giannusa moved to disburse the surplus funds to him, pursuant to his "present possessory interest" in the property. Clerk's Papers (CP) at 30. Giannusa owed Complete Bowling at least $115,824.11, so Complete Bowling objected, arguing that its second-position deed of trust had priority to the surplus funds over Giannusa's interest. Giannusa replied that Complete Bowling could not recover the surplus funds because it purchased the property. The superior court commissioner denied Giannusa's motion.

## ANALYSIS

### I. JUNIOR LIENHOLDER'S RIGHT TO SURPLUS FUNDS

¶5 Giannusa argues that junior lienholders who purchase the subject property at the trustee's sale should be precluded from recovering surplus funds. He contends that recovering a surplus amounts to a deficiency judgment and that RCW 61.24.100(1), the antideficiency statute, precludes a junior lienholder from obtaining a deficiency judgment. We disagree. Under the plain language of RCW 61.24.080(3) and .100(1), purchasing junior lienholders are permitted to recover surplus funds.

¶6 Since this issue is purely legal and involves statutory construction, our review is de novo. *Beal Bank, SSB v. Sarich*, 161 Wn.2d 544, 547, 167 P.3d 555 (2007); *In re Tr.'s Sale of Real Prop. of Upton*, 102 Wn. App. 220, 223, 6 P.3d 1231 (2000). Our task is to discern the legislature's intent. *City of Auburn v. Gauntt*, 174 Wn.2d 321, 328, 274 P.3d 1033 (2012). "We begin with the plain meaning of the statute, considered in its broader statutory context." *Gauntt*, 174 Wn.2d at 328.

¶7 Chapter 61.24 RCW governs Washington's use of deeds of trust. *Beal Bank*, 161 Wn.2d at 548. Under this act, a deed of trust holder may nonjudicially foreclose when a borrower defaults under the terms of the obligation and the deed of trust contains a power of sale. RCW 61.24.030. The trustee will hold a sale where anyone other than the trustee may bid on the property. RCW 61.24.070(1). After covering the sale's expense, the proceeds are first applied toward the obligation foreclosed. RCW 61.24.080(1), (2). Any surplus shall be deposited with the superior court clerk, and the funds may be disbursed only upon a superior court's order. RCW 61.24.080(3).

¶8 Interests in the surplus continue in the same order of priority that they had attached to the property, but a party must move to request disbursement:

> Interests in, or liens or claims of liens against the property eliminated by sale under this section shall attach to the surplus in the order of priority that it had attached to the property. A party seeking disbursement of the surplus funds shall file a motion requesting disbursement in the superior court for the county in which the surplus funds are deposited.

RCW 61.24.080(3); *see Upton*, 102 Wn. App. at 223-25. A second deed of trust beneficiary has a superior interest in the surplus over the borrower. *Upton*, 102 Wn. App. at 224.

¶9 In *Upton*, Division One of this court held that a second deed of trust beneficiary had priority to the surplus funds over a homeowner's interest, rejecting the homeowner's argument that its homestead interest was superior. 102 Wn. App. at 222-25. Under RCW 61.24.080(3), the second deed of trust beneficiary maintained its priority interest in the surplus from the trustee's sale. *Upton*, 102 Wn. App. at 224-25. Public policy supported this conclusion: "A contrary holding would discourage lenders from granting second deeds of trust and from entering subordination agreements." *Upton*, 102 Wn. App. at 225.

¶10 After the trustee's sale, deficiency judgments shall not be obtained:

> Except to the extent permitted in this section for deeds of trust securing commercial loans, a deficiency judgment shall not be obtained on the obligations secured by a deed of trust against any borrower, grantor, or guarantor after a trustee's sale under that deed of trust.

RCW 61.24.100(1). This statute contrasts with judicial foreclosures, where a foreclosing lienholder may seek a judgment on the deficiency. RCW 61.12.080.

¶11 Initially, our Supreme Court held that RCW 61.24-.100(1) prevented a nonforeclosing junior lienholder from obtaining a deficiency judgment. *Wash. Mut. Sav. Bank v. United States*, 115 Wn.2d 52, 58, 793 P.2d 969, 800 P.2d 1124 (1990). In that case, Washington Mutual, a nonforeclosing junior lienholder who purchased the subject prop-

erty, objected to the Internal Revenue Service's (IRS) redemption payment for the sale price. *Wash. Mut. Sav. Bank*, 115 Wn.2d at 54-55. This disputed amount was less than the fair market value of the property or the value of the purchase price plus Washington Mutual's deed of trust. *Wash. Mut. Sav. Bank*, 115 Wn.2d at 54-55. Holding that the IRS owed the value of the purchase price plus Washington Mutual's lien, the Supreme Court stated that no deficiency judgment may be obtained by a nonforeclosing junior lienholder following the trustee's sale. *Wash. Mut. Sav. Bank*, 115 Wn.2d at 58-59. The court clarified that it did not address whether the junior deed of trust holder could sue on the promissory note. *Wash. Mut. Sav. Bank*, 115 Wn.2d at 59.

¶12 The Supreme Court has since restricted that holding in *Beal Bank*, 161 Wn.2d 544. There, a senior lienholder nonjudicially foreclosed on its deed of trust, and the junior lienholder sued under its promissory note as an unsecured party. *Beal Bank*, 161 Wn.2d at 546. The trial court dismissed the claims, relying on *Washington Mutual*. *Beal Bank*, 161 Wn.2d at 547-48. The Supreme Court reversed, holding that the junior lienholder could bring the promissory note action and that "the right of nonforeclosing junior lienholders and creditors is simply not implicated" by RCW 61.24.100(1). *Beal Bank*, 161 Wn.2d at 548. The court rejected the debtors' argument that a foreclosure would extinguish all liens, finding no statute to support that conclusion. *Beal Bank*, 161 Wn.2d at 548. It held, "While foreclosure eliminates the security of a junior lienholder, the debts and obligations owed to that nonforeclosing junior lienholder are not affected by foreclosure under the statutes." *Beal Bank*, 161 Wn.2d at 548.

¶13 The court distinguished *Washington Mutual*, essentially limiting its holding to issues involving redemption. *Beal Bank*, 161 Wn.2d at 549-50. While the *Washington Mutual* court suggested that it was deciding a purchasing junior lienholder's rights, "the underlying issue centered on

the rights of the IRS to 'redeem' the property," which involve federal statutes that are different than the state nonjudicial foreclosure statutes. *Beal Bank*, 161 Wn.2d at 549. The *Washington Mutual* court applied redemption principles, so it did not hold that a trustee's sale extinguishes a junior note. *Beal Bank*, 161 Wn.2d at 549. Instead, "the obligation owed to a junior lienholder continues after a trustee's sale." *Beal Bank*, 161 Wn.2d at 549.

¶14 We hold that the deed of trust act plainly allows a purchasing junior lienholder to recover surplus funds. Under RCW 61.24.080(3), the junior lienholder's interest, eliminated by the trustee's sale, attaches to the surplus. The junior lienholder has priority to the surplus over the property owner. *Upton*, 102 Wn. App. at 224-25. And since the legislature specifically created a procedure for subordinate interest holders to seek disbursement of the surplus, the legislature intended that this process would occur independent of any antideficiency judgment provision in RCW 61.24.100(1). Accordingly, the plain language of the deeds of trust act allowed Complete Bowling, as a junior lienholder whose interest was eliminated by the trustee's sale, to seek disbursement of the surplus funds.

¶15 Giannusa argues that RCW 61.24.100(1), as interpreted by *Washington Mutual*, precludes a nonforeclosing junior lienholder who purchases the property at the trustee's sale from seeking the surplus funds. But neither RCW 61.24.080(3) nor RCW 61.24.100(1) places any such limitation. To follow Giannusa's reasoning, the court would have to ignore the plain meaning of RCW 61.24.080. *See Cox v. Helenius*, 103 Wn.2d 383, 387, 693 P.2d 683 (1985) (courts are required, when possible, "to give effect to every word, clause and sentence of a statute"). The Supreme Court also has significantly limited *Washington Mutual*, explaining that RCW 61.24.100 does not implicate the "right of nonforeclosing junior lienholders and creditors" and that *Washington Mutual* is distinguishable as a redemption case involving federal statutes. *Beal Bank*, 161 Wn.2d at 548-49.

¶16 Giannusa also argues that on a public policy level, the junior lienholder would maintain an unfair competitive advantage because it could recover the proceeds up to the outstanding debt and then sell the property at a profit. Giannusa's argument fails. Complete Bowling will have to pay the full bid price. While it can seek disbursement of the surplus funds, any receipt of those funds would credit against the debt Giannusa still owes Complete Bowling. And if Complete Bowling had acted in bad faith, Giannusa could have a consumer protection act claim:

> It is an unfair or deceptive act or practice under the consumer protection act, chapter 19.86 RCW, for any person, acting alone or in concert with others, to offer, or offer to accept or accept from another, any consideration of any type not to bid, or to reduce a bid, at a sale of property conducted pursuant to a power of sale in a deed of trust. . . . However, it is not an unfair or deceptive act or practice . . . for the beneficiary to arrange to provide financing for a particular bidder or to reach any good faith agreement with the borrower, grantor, any guarantor, or any junior lienholder.

Former RCW 61.24.135 (2008).

¶17 If anything, public policy weighs in Complete Bowling's favor. Allowing purchasing nonforeclosing junior lienholders to seek the surplus would promote borrowing, as second-position deed of trust holders could feel more secure in lending money, knowing that they could use part of the loan to obtain the property if a senior lienholder forecloses. *See Upton*, 102 Wn. App. at 225. Since junior lienholders might bid on the property, there would be increased competition for the property at the trustee's sale. Finally, because the surplus offsets the borrower's outstanding debt, the junior lienholders would use the courts less to seek payment of the outstanding debt.

¶18 A purchasing nonforeclosing junior lienholder may seek the surplus funds. The commissioner correctly denied Giannusa's motion to disburse.

## II. THE MERGER DOCTRINE

¶19 For the first time on appeal, Giannusa argues that Complete Bowling should be precluded from pursuing the surplus funds since a purchasing junior lienholder merges its deed of trust into its ownership interest. We decline to consider this argument because Giannusa did not present it to the trial court and makes no argument that preservation was not required. RAP 2.5(a); *Sorrel v. Eagle Healthcare, Inc.*, 110 Wn. App. 290, 296, 38 P.3d 1024 (2002); *see Boeing Emps.' Credit Union v. Burns*, 167 Wn. App. 265, 277, 272 P.3d 908 (2012) (" '[t]he merger rule is based in part upon the need to prevent vexatious relitigation of matters that have already passed into judgment as between the parties to the litigation and their successors. . . . [T]he doctrine is designed to promote justice and should not be carried further than that end requires.' " (quoting *Caine & Weiner v. Barker*, 42 Wn. App. 835, 836-37, 713 P.2d 1133 (1986)), *petition for review filed*, No. 87382-8 (Wash. May 16, 2012).

¶20 We affirm.

QUINN-BRINTNALL and VAN DEREN, JJ., concur.