IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Trustee's Sale of the Real Property of: | No. 77420-4-I |
| DANIEL ANDERSON, | DIVISION ONE |
| GLOBAL PROCEEDS, LLC, | PUBLISHED OPINION |
| Appellant, | |
| v. | |
| UMPQUA BANK, | |
| Respondent. | FILED: March 18, 2019 |

CHUN, J. — A nonjudicial foreclosure sale of Daniel Anderson's property yielded surplus proceeds. Umpqua Bank (Umpqua) and Global Proceeds, LLC. (Global Proceeds)[1] filed competing motions with the superior court for disbursement of the surplus under RCW 61.24.080(3). The trial court denied Global Proceeds' request and disbursed the full amount of the surplus to Umpqua, despite Global Proceeds' assertion of a higher priority lien. Because Global Proceeds failed to provide sufficient evidence of an enforceable lien, we affirm.

---

[1] The following series of events led to Global Proceeds' role in this matter: Anderson originally borrowed money from GreenPoint Mortgage Funding, Inc. (GreenPoint). In October 2007, Countrywide Home Loans, Inc. (Countrywide) purchased GreenPoint's assets. Bank of America then purchased Countrywide in July 2008. On June 5, 2012, Nationstar Mortgage Holdings (Nationstar) bought the loan servicing rights to Anderson's loan from Bank of America. Veripro Solutions (Veripro) serves as the internal collection division of Nationstar. Global Proceeds, in turn, serves as the authorized collection agent for Veripro. Global Proceeds, as agent for Veripro, claims the right to act in place of GreenPoint.

## I.
## BACKGROUND

Daniel Anderson owned real property in Kent, Washington. On April 19, 2004, he obtained two loans from GreenPoint Mortgage (GreenPoint), both secured by the property. The first was for $148,000, and the second was for $27,700.

On November 4, 2010, Umpqua received a judgment against Anderson in the amount of $58,874.29. The judgment was recorded on March 25, 2011.

Anderson died on January 25, 2014.

On January 20, 2017, the trustee, Quality Loan Servicing Corporation of Washington, conducted a nonjudicial foreclosure sale for the first position lien. The trustee sold the property for $210,200, and satisfied GreenPoint's first position lien. Pursuant to RCW 61.24.080, the trustee deposited the surplus with the registry of King County Superior Court. After fees and costs, the deposited net surplus funds amounted to $39,031.25.

On May 15, 2017, Umpqua filed a motion to disburse the entirety of the surplus funds toward their judgment lien. Umpqua noted that an online search of King County real property records failed to produce other creditors with recorded judgments against Anderson as of March 25, 2011, the recording date of its judgment.

On June 7, 2017, Global Proceeds filed an untimely objection to Umpqua's request for disbursement. Global Proceeds asserted priority to funds due to a balance owed on the second promissory note and deed of trust recorded with GreenPoint on May 4, 2004. Global Proceeds supported this

request with a declaration from Global Proceeds agent Stacey Hobrath "based upon information and belief, and [her] own investigations." According to Hobrath, Anderson had executed a promissory note secured by a deed of trust on April 19, 2004 in favor of GreenPoint. Hobrath reported an outstanding balance of $22,960.51 on the promissory note, payable to Global Proceeds as the agent authorized to act in place of GreenPoint.

Despite the late opposition, a commissioner heard argument from Umpqua and Global Proceeds on June 9, 2017. The commissioner continued the hearing for further briefing on the enforceability of the promissory note, but entered a finding entitling Umpqua to the $16,070.74 of the surplus in excess of the disputed $22,960.51 claimed by Global Proceeds. The commissioner reserved disbursement of the remaining funds.

Before the next hearing, Umpqua requested Global Proceeds provide "documentation itemizing any payments made (and the dates the payments were made) on the promissory note under which Global Proceeds is claiming entitlement to a portion of the surplus." Counsel for Global Proceeds responded he was trying to obtain better information because he possessed only "an excel sheet with some payments, but it lacks references to the debtor." Umpqua never received additional information pertaining to this request.

Global Proceeds subsequently filed its own motion for disbursement of the funds. The motion did not include any documentary evidence to supplement Hobrath's earlier declaration. After the noon deadline on the day before oral argument, Global Proceeds submitted a copy of the Assignment of Deed of Trust

3

for the second mortgage from GreenPoint to Bank of America, and a copy of an April 20, 2017 letter establishing the payoff amount for the loan.

On July 21, 2017, the commissioner heard oral argument on the competing motions for disbursement of the surplus. Umpqua argued that Global Proceeds failed to provide evidence of an enforceable debt. The commissioner granted Umpqua's motion, allowing disbursal of the entire surplus.

Global Proceeds filed a motion for revision, which the trial court denied. Global Proceeds appeals.

## II.
## ANALYSIS

### RCW 61.24.080 Distribution of Surplus Funds

In this case, the trial court based its decision solely on documentary evidence, declarations, and memoranda of law. Therefore, this court stands in the same position as the trial court and reviews the decision de novo. Morgan v. City of Federal Way, 166 Wn.2d 747, 753, 213 P.3d 596 (2009).

The Deed of Trust Act (DTA) provides for distribution of surplus funds from a nonjudicial foreclosure sale. RCW 61.24.080(3). "Interests in, or liens or claims against the property eliminated by sale under this section shall attach to the surplus in the order of priority that it had attached to the property, as determined by the court." RCW 61.24.080(3). A party seeking disbursement of surplus funds must file a motion with the superior court holding the deposited funds. RCW 61.24.080(3). The priority of competing creditor rights is determined by the order in which the liens attached to the property. In re Matter of Deal, 85 Wn. App. 580, 583, 933 P.2d 1084 (1997). A junior lienholder's

interest is eliminated by the trustee sale and attaches to the surplus. In re Tr.'s Sale of Real Prop. of Giannusa, 169 Wn. App. 904, 910, 282 P.3d 122 (2012).

RCW 61.24.080(3) requires a party seeking disbursement to file a motion with the superior court. But the statute omits guidance on the contents of the motion necessary to establish a claim to the surplus funds. However, RCW 61.24.080(3) tasks the superior court with deciding the order of priority of attachment to original property and continuing on to the surplus. To perform this duty, the trial court must determine the existence of any interests in the property. Claimants under RCW 61.24.080(3) must therefore provide evidence to establish the existence and balance of the lien. Without this information, the trial court cannot evaluate the priority of competing claims to the surplus funds.

Every case has a burden of production, met when the plaintiff produces evidence sufficient to support a finding on each element of the cause of action. Carle v. McChord Credit Union, 65 Wn. App. 93, 98, 827 P.2d 1070 (1992). "[P]arties must first satisfy the court that they have a quantity of evidence fit to be considered by the trier of fact." State v. Paul, 64 Wn. App. 801, 806, 828 P.2d 594(1992) (emphasis omitted). In ordinary civil cases, this burden of production amounts to "evidence from which a rational trier of fact could find by a preponderance of the evidence the facts required by the substantive law." In re Dependency of C.B., 61 Wn. App. 280, 285, 810 P.2d 518, 521 (1991). Applying these principles, a party claiming surplus funds from a foreclosure sale under RCW 61.24.080(3) needs to demonstrate the right to assert the debt and the amount owed by a preponderance of evidence. Claimants seeking funds under

5

RCW 61.24.080(3) must produce evidence admissible under the Rules of Evidence. See ER 1101(a).

Here, Umpqua provided definitive evidence of its judgment lien. Umpqua submitted a certified copy of the King County Superior Court judgment entered on its behalf against Anderson. Umpqua also included a copy of the official record of the judgment. Global Proceeds does not dispute the validity of Umpqua's judgment.

In contrast, Global Proceeds produced minimal evidence in support of its claimed interest in the surplus. Global Proceeds failed to produce a promissory note or deed of trust signed by Anderson, and any evidence of payment history, or a calculation of the balance owed. In addition to Hobrath's conclusory declaration, Global Proceeds submitted a copy of the Assignment of the Deed of Trust from GreenPoint to Bank of America executed on July 5, 2012. The Assignment transferred "all beneficial interest" under the Deed of Trust originally made by Anderson on April 19, 2004, for the loan amount of $27,700.00. Additionally, Global Proceeds produced a letter from Veripro Solutions listing a payoff amount of $22,960.51 for the loan as the sole evidence of the outstanding balance of the lien.

Taken together, Global Proceeds' evidence establishes neither its right to assert the debt nor the amount owed by a preponderance of the evidence. Therefore, Global Proceeds cannot meet its burden of production.[2] Without

---

[2] Global Proceeds centers its argument on the statute of limitations, claiming the trial court erroneously concluded its lien was unenforceable because the statute of limitations had run on the promissory note. But Global Proceeds' focus on the statute of limitations misses the larger issue—the inadequacy of its evidence. The statute of limitations issue is merely one potential

adequate evidence of Global Proceeds' lien, the trial court did not err by disbursing the funds to Umpqua.

## Attorney fees

Global Proceeds requests attorney fees and costs from the surplus funds under the terms of the Promissory Note. However, Global Proceeds merely asserts, without legal argument, its entitlement to fees under the promissory note. This does not constitute an adequate request for fees on appeal. "The party requesting fees on appeal is required by RAP 18.1(b) to argue the issue and provide citation to authority in order to advise the court as to the appropriate grounds for an award of attorneys' fees and costs." Blueberry Place Homeowners Ass'n v. Northward Homes, Inc., 126 Wn. App. 352, 363 n.12, 110 P.3d 1145 (2005). Nor is Global Proceeds a prevailing party. Thus, we decline to award fees.

Affirmed.

_____Chun, C.J._____

WE CONCUR:

_____Andrus, J._____          _____Leach, J._____

---

problem stemming from Global Proceeds' failure to produce sufficient evidence of the lien. Regardless of the statute of limitations, the copy of the Assignment of Deed of Trust and the letter summarily listing a payoff amount does not establish the continued existence of the lien and its outstanding balance by a preponderance of the evidence. Without adequate evidence to satisfy the burden of production, the trial court cannot assess the merits of Global Proceeds' claim to the surplus funds.