IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Trustee's Sale of the Real Property of: Bernard Charles Kieper, | ) ) ) | No. 80628-9-I |
| U.S. BANK NATIONAL ASSOCIATION ND, | ) ) | DIVISION ONE |
| Appellant/Cross-Respondent, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| BERNARD CHARLES KIEPER, as a separate estate, | ) ) ) | |
| Respondent/Cross-Appellant. | ) ) ) | |

HAZELRIGG, J. — U.S. Bank National Association, ND seeks reversal of an order denying in part its motion to disburse surplus funds from a non-judicial foreclosure sale. U.S. Bank argues that the trial court either failed to consider or failed to give proper weight to the business records that it submitted as proof of its lien. The Estate of Bernard C. Kieper cross-appeals, arguing that the trial court erred in granting U.S. Bank's motion in part. Because U.S. Bank produced sufficient evidence to establish by a preponderance the existence and amount owed, we reverse the partial denial of the motion.

FACTS

On November 3, 2017, Northwest Trustee Services, Inc. conducted a non-judicial foreclosure sale on that certain Deed for Trust dated March 7, 2003 and

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

recorded March 18, 2003 under Whatcom County Auditor's File No. 2030303565 (Foreclosed Deed of Trust). The Foreclosed Deed of Trust was from Bernard C. Kieper, as a separate estate, and encumbered, in the first lien position, that certain real property commonly known as 2424 Verona St., Bellingham, WA 98229-3746. Surplus funds from the sale totaling $118,520.19 were deposited with the Clerk of the Whatcom County Superior Court.

On May 15, 2018, U.S. Bank National Association, ND filed a motion seeking disbursement of $87,559.69 of the surplus funds under RCW 61.24.080. U.S. Bank attached a copy of a signed "Equiline Agreement" showing that it made a home equity line of credit loan to Kieper in the principal amount of $84,500 in January 2006. The Equiline Agreement stated that Kieper could draw on the line of credit by using one of the checks provided to him by U.S. Bank, using the provided VISA credit card to make purchases or receive cash advances, or by attaching the line of credit to a bank account. Cash advances could be obtained with the VISA credit card via ATM transactions. U.S. Bank also attached a Deed of Trust from Bernard C. Kieper and Marlene T. Kieper to U.S. Bank as beneficiary, recorded January 27, 2006 under Whatcom County Auditor's File No. 2060104426. Finally, U.S. Bank submitted a letter from its foreclosure department stating the payoff information for Kieper's loan and showing $84,357.58 in principal and $3,202.11 in interest for a total of $87,559.69 owed as of the date of the foreclosure sale. However, the proposed order that U.S. Bank submitted with its motion stated that $14,981.93 would be disbursed. At a hearing on the motion,

Judge Charles R. Snyder signed the unopposed Order for Disbursement of Surplus Funds as presented.

The Kieper Estate sought disbursement of the remaining funds in the court registry. U.S. Bank then filed a second motion seeking an amended order disbursing the full $87,559.69 requested in its first motion. U.S. Bank's motion explained that the previously signed order erroneously stated the wrong amount. In support of the motion, U.S. Bank attached the same three loan documents as well as a transaction history statement for the loan. The Kieper Estate opposed U.S. Bank's motion and renewed its motion for disbursement of the remaining funds, which U.S. Bank opposed.

On February 22, 2019, a hearing on the competing motions took place before Judge Snyder. The court indicated that the evidence produced by U.S. Bank was not specific enough for the court to determine with confidence that the transactions were what they purported to be. The court denied both motions without prejudice pending production of more detailed evidence.

Both parties again moved for disbursement. In addition to the loan documents, U.S. Bank submitted a declaration of an employee loan officer. The officer stated that they were "competent to review loan records and evaluate status based upon those records" and that they "personally [knew] that the records kept are done so in the course of regularly conducted business and as a matter of business routine." They stated that "[e]ntries in these records are made at or near the time of the event recorded by or with information from a person with knowledge of the event recorded." The transaction history detailing the line items charged to

the account was attached to the declaration, and the officer provided a detailed explanation of the transaction codes or categories that appeared in the document. The officer also stated that the initial draw on the line of credit occurred on January 11, 2006 with a check for $27,758.30 generated to pay off and close another account. A disbursement summary dated January 11, 2006 documenting the payment was attached to the declaration.

A hearing on the competing motions took place on August 30, 2019 before Judge Lee P. Grochmal. Judge Grochmal indicated that there was not "a lot of additional detail provided by the bank since Judge Snyder made his ruling." The court was concerned that the transaction history was "a blanket statement" and stated that "there must be some documentation that backs up the fact that this borrower took the money out of the bank." The court found that there was sufficient evidence of the $27,758.30 balance advance dated January 11, 2006 and authorized disbursement of the funds to U.S. Bank in that amount. The court denied the remainder of the requested disbursement to U.S. Bank with prejudice. The parties agreed that the Kieper Estate was undisputedly owed at least $30,000 of the funds in the registry, and the court authorized disbursement of that sum. U.S. Bank appealed the partial denial of its motion. The Kieper Estate cross-appealed the partial grant of U.S. Bank's motion.[1]

---

[1] A commissioner of this court entered a notation ruling on December 20, 2019 stating that the Kieper Estate's cross-appeal would be considered timely under the circumstances of this case and allowed both the appeal and the cross-appeal to proceed.

ANALYSIS

I.    Consideration of Business Records

U.S. Bank first argues that the trial court erred in either refusing to admit the business records or, if the records were admitted, in refusing to give them appropriate weight.

A.  Preservation

The Kieper Estate argues that we should refuse to review U.S. Bank's assignments of error because U.S. Bank did not argue before the trial court that its records should be admissible under the Uniform Business Records as Evidence Act (UBRA)[2] or that the court failed to give weight to the information in its records. Generally, we will not review an issue that is raised for the first time on appeal and was not pleaded or argued before the trial court.  RAP 2.5(a); Wash. Fed. Sav. v. Klein, 177 Wn. App. 22, 29, 311 P.3d 53 (2013).

Although U.S. Bank did not specifically argue that the records were admissible under the UBRA, the sufficiency of U.S. Bank's evidence as proof of the debt owed by Kieper was the central issue before the trial court.  The parties briefed and argued this issue before the trial court, giving the court an opportunity to decide the claim of error.  We will review U.S. Bank's assignments of error.

B.  Admission

U.S. Bank contends that it is unclear from the record whether the court admitted and considered the business records but argues that the court erred

_____

[2] Chap. 5.45 RCW.

- 5 -

either in refusing to admit and consider the records or, if the records were admitted, in failing to give them appropriate weight. It argues that the orders entered by the trial court do not refer to the admission or denial of the proffered business records and the trial court never specified whether it admitted the records in whole or in part but found them unreliable or refused to consider the records because they did not meet the standards for admission. The Kieper Estate contends that the trial court admitted and considered the business records offered by U.S. Bank but found the evidence to be substantively insufficient.

There is no indication in the record that the court found the records inadmissible. The Kieper Estate did not object to the admissibility of the records, and the court did not explicitly engage in an admissibility analysis on the record during the hearing. In its order disbursing funds to U.S. Bank, the court stated that it had "considered the Declaration and Exhibits filed in support of [U.S. Bank's] motion." This shows that the court admitted and evaluated the business records, then based its ruling on the sufficiency of the evidence.

U.S. Bank also argues that the court failed to give the records due weight under UBRA. The UBRA "makes evidence that would otherwise be hearsay competent testimony." State v. Fleming, 155 Wn. App. 489, 499, 228 P.3d 804 (2010). Under RCW 5.45.020, certain requirements must be met to allow admission of this evidence:

> To be admissible under the business records exception, (1) the business record must be in record form; (2) be of an act, condition, or event; (3) be made in the regular course of business; (4) be made at or near the time of the fact, condition, or event; and (5) the court must be satisfied that the sources of information, method, and time of preparation justify admitting the evidence.

Id. Under UBRA, business records are presumptively reliable if made in the regular course of business and if there was no apparent motive to falsify. Id. In State v. Fleming, Division Two of this court noted that "[n]o Washington case has squarely addressed whether a trial court errs by admitting evidence under the business record exception where there are questions regarding the records' accuracy" and concluded that contentions of anomalies in the record-keeping went to the weight of the evidence rather than its admissibility. Id. at 500–01. The statement in Fleming regarding the presumptive reliability of business records appears to relate to the admissibility of the records rather than the weight to be given to the evidence once admitted. U.S. Bank has not shown that the court erred in its assessment of this evidence.

II.      Disbursement

U.S. Bank next contends that the court erred in denying distribution of the surplus funds to U.S. Bank for the full amount of its claim. When a trial court bases its decision on distribution of funds under RCW 61.24.080 solely on documentary evidence, declarations, and memoranda of law, we stand in the same position as the trial court and review the decision de novo. Matter of Anderson, 8 Wn. App. 2d 41, 45, 436 P.3d 853 (2019). "[A] party claiming surplus funds from a foreclosure sale under RCW 61.24.080(3) needs to demonstrate the right to assert the debt and the amount owed by a preponderance of evidence." Id. at 46.

In arguing that U.S. Bank's evidence was insufficient to prove its claim, the Kieper Estate relies primarily on two cases involving collection actions on alleged

credit card debt: <u>Discover Bank v. Bridges</u>, 154 Wn. App. 722, 226 P.3d 191 (2010), and <u>Citibank S.D. N.A. v. Ryan</u>, 160 Wn. App. 286, 247 P.3d 778 (2011). U.S. Bank argues that these cases do not support the partial denial of its motion. In both cases, the trial court granted summary judgment for the banks, which this court reversed on appeal. <u>Bridges</u>, 154 Wn. App. at 724; <u>Ryan</u>, 160 Wn. App. at 288.

In <u>Bridges</u>, Discover Bank supported its motion for summary judgment with an affidavit of an employee of an affiliated entity that assisted Discover in collecting delinquent debts with attached account statements and a cardmember agreement, as well as a second affidavit explaining the relationship between Discover Bank and the affiliated entity. 154 Wn. App. at 724–25. Division Two of this court found that this evidence was not sufficient to establish that there was no genuine issue of material fact when viewed in the light most favorable to the nonmoving party. <u>Id.</u> at 726–27. The court found that Discover Bank had not met its burden to show acceptance of the cardmember agreement and personal acknowledgement of the account:

> Discover Bank's pleadings disclose neither a signed agreement between Discover Bank and the Bridgeses nor detailed, itemized proof of the Bridgeses' card usage. Nor do they show that the Bridgeses acknowledged the debt, for example, through evidence of cancelled checks or online payment documentation. The record contains only monthly statements summarizing the Bridgeses' alleged account balance and payments purportedly made thereon and affidavits from DFS employees, who were familiar with the Bridgeses' purported account records.

<u>Id.</u> at 727.

In <u>Ryan</u>, Citibank supported its motion for summary judgment with an affidavit of its employee setting forth the total claimed debt with attached monthly account statements and a six-page unsigned credit card agreement. 160 Wn. App. at 288. The account statements showed payments made on the account but made no indication of how the payments were made, nor did they "cover the period in which the card was first issued or the majority of the debt was accumulated." <u>Id.</u> This court, relying on <u>Bridges</u>, found that the "bare notation of supposed payments on the account statements" was not sufficient to prove Ryan's personal acknowledgement of the debt. <u>Id.</u> at 293. We also rejected Citibank's argument that a numerical amount under the heading "purchase" on some of the account statements proved Ryan's assent to the cardholder agreement by establishing that he personally used the card:

> None of the notations on the statements offered by Citibank here actually explained what the supposed purchase was or who it was from. Nor is it clear whether these were individual "purchases" or were only total amounts for the period covered by the statement. Moreover, these supposed purchases did not add up to anything near the total Citibank claimed was owed on the card. And the account statements did not otherwise provide a basis to match the listed amounts with any particular charge slip or purchase. The materials Citibank provided thus did not constitute the detailed and itemized documentation required by <u>Bridges</u>.

<u>Id.</u>

More recently, we relied on <u>Bridges</u> and <u>Ryan</u> to uphold a grant of summary judgment for a bank in an action to collect credit card debt in <u>American Express Centurion Bank v. Stratman</u>, 172 Wn. App. 667, 669, 292 P.3d 128 (2012). In <u>Stratman</u>, American Express supported its motion for summary judgment with an employee declaration stating that they had personal knowledge that the records

were kept in the ordinary course of business, that it was the regular practice to record transactions on or about the time of occurrence, and that $21,939.37 was owed on the account. 172 Wn. App. at 670. Attached to the declaration were account statements addressed to Stratman referencing the same account number and showing that Stratman had been issued a credit card and had made both purchases and payments on the account. Id. at 671. An unsigned cardmember agreement was also attached, which stated that "[w]hen you keep, sign or use the Card issued to you (including any renewal or replacement Cards), or you use the account associated with this Agreement (your 'Account'), you agree to the terms of this Agreement." Id. We found that there was no genuine issue of material fact that Stratman used the credit card because the account statements provided the date and amount of individual purchases as well as the name of the entity from whom the goods or services were purchased. Id. at 674. Unlike Bridges and Ryan, "the information contained in Stratman's account statements provided a sufficient basis 'to match the listed amounts with [a] particular charge slip or purchase.'" Id. (quoting Ryan, 160 Wn. App. at 293).

Here, in contrast to Bridges and Ryan, U.S. Bank proved the existence and balance of the lien by a preponderance of evidence. See CR 56; Anderson, 8 Wn. App. 2d at 46. U.S. Bank produced a signed agreement showing that Kieper agreed to a home equity line of credit in the amount of $84,500 and a recorded deed of trust. This evidence was sufficient to establish the existence of its lien against the surplus funds.

The evidence submitted by U.S. Bank to establish the balance of the account was most analogous to the evidence produced in Stratman. The Equiline Agreement stated that Kieper could draw on the line of credit via check, VISA credit card, or ATM withdrawal. U.S. Bank submitted a transaction history statement similar to that submitted in Stratman showing the date, description code, amount, and principal balance resulting from each transaction. It also presented an employee declaration explaining the description codes and stating that the record was created in the usual course of business and at the time of each transaction.

The Kieper Estate argues that the documents submitted by U.S. Bank do not agree on the amount owed. The transaction history statement showed a total principal balance of $84,357.58 as of the last entry on April 22, 2019. U.S. Bank also submitted a letter showing a principal balance of $84,357.58 on Kieper's account and interest of $3,202.11 for a total of $87,559.69, the amount of U.S. Bank's requested disbursal. Although the loan account balance listed in the letter is greater than the principal amount of the loan, the signed Equiline Agreement explicitly permits the addition of unpaid finance charges to the total.

Although the transaction history is less specific than the statements in Stratman, it is sufficient to show that the balance of the lien was more likely than not the amount requested by U.S. Bank. The court erred in denying U.S. Bank's motion in part.

III.    Cross-Appeal

In its cross-appeal, the Kieper Estate argues that the trial court erred in granting U.S. Bank's motion for disbursal in part and in disbursing $27,758.30 to

U.S. Bank. The Kieper Estate contends that U.S. Bank failed to present sufficient or competent evidence of funds disbursed to the alleged debtor, of the alleged debtor's acknowledgement of payments or disbursements, or of any other detailed, itemized documentation of the alleged debt or transaction. Consistent with the conclusion above that there was sufficient evidence to show that U.S. Bank was more likely than not owed the full disbursement of $87,559.69, the court did not err in granting partial disbursement to U.S. Bank.

The Kieper Estate also requests an award of its attorney fees and costs under RAP 18.1. A party may request an award of attorney fees and costs if the applicable law provides the right to recover fees and costs on appeal. RAP 18.1(a). The Kieper Estate cites to the Equiline Agreement, which entitles U.S. Bank to an award of reasonable attorney fees and costs in collection actions. The Kieper Estate argues that this provides a basis for the award it seeks under RCW 4.84.330. This statute provides that when a contract specifically states that one party is entitled to attorney fees and costs incurred to enforce the contract, the prevailing party in the action shall be entitled to reasonable attorney fees, regardless of whether the prevailing party is the party entitled to fees under the agreement. RCW 4.84.330. Because the Kieper Estate is not the prevailing party on appeal, the request for attorney fees and costs is denied.

Reversed.

WE CONCUR:

Andrus, A.C.J.

Appelwick, J.

- 12 -